**Mary Kate LEAMAN,
Plaintiff-Appellant,**

v.

**OHIO DEPARTMENT OF MENTAL RE-
TARDATION & DEVELOPMENT DIS-
ABILITIES, et al., Defendants-Appel-
lees.**

No. 85–3471.

United States Court of Appeals,
Sixth Circuit.

Reargued Nov. 12, 1986.
Decided July 23, 1987.

Marc D. Mezibov, Cincinnati, Ohio, for plaintiff-appellant.

Deborah A. Piperni, Asst. Atty. Gen., Columbus, Ohio, Tim Mangan, Gene Holliker (argued), for defendants-appellees.

Before LIVELY, Chief Judge, and ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, KRUPANSKY, WELLFORD, MILBURN, GUY, NELSON, RYAN and BOGGS, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a district court order (reported at 620 F.Supp. 783) in which Chief Judge Carl Rubin dismissed an action that Plaintiff Mary Kate Leaman, a former probationary employee of the Ohio Department of Mental Retardation, had brought against the department and certain of its officials for terminating her employment. The complaint alleged that the discharge violated 42 U.S.C. § 1983, 29 U.S.C. § 794 (the Rehabilitation Act of 1973), and the First and Fourteenth Amendments.

After suing the defendants in federal court, Ms. Leaman elected to file a virtually identical complaint in the Ohio Court of Claims against the Department of Mental Retardation alone. Judge Rubin then dismissed the federal action. As to the Department of Mental Retardation, the dismissal was based on sovereign immunity grounds. As to the individual defendants, Judge Rubin applied a provision of the Ohio Court of Claims Act that reads (in pertinent part) as follows:

"Except in the case of a civil action filed by the state, filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any state officer or employee."

Ohio Revised Code § 2743.02(A)(1).

The judgment in favor of the department is not challenged here; what is contested is the district court's holding that by electing to sue the department in the Ohio Court of Claims, the plaintiff voluntarily waived her cause of action against the individual defendants.

By divided vote, a three-judge panel of this court reversed the order dismissing the case against the individual employees. On petition for rehearing, eight of the fifteen active judges of the full court voted to rehear the case en banc, as authorized by 28 U.S.C. § 46(c), and an order was entered vacating the panel decision. After reargument, but before issuance of any final decision, one of the judges who had voted for the rehearing en banc recused himself from further participation. A question was then raised at an administrative meeting of the court as to whether the recusal ought to be deemed to relate back to the vote on the petition for rehearing. Chief Judge Lively ruled that the recusal was not retroactive. After discussion, and on motion duly made and seconded, the court voted, as the minutes of the meeting reflect, to "sustain the ruling of the chair and to ratify the action of the court in voting for en banc rehearing." Only three of the remaining fourteen judges voted against the motion.

This chain of procedural events has caused two members of the court serious concern. Before addressing the merits of the appeal and explaining why we believe the judgment of the trial court must be affirmed, therefore, we shall set forth the reasons why we do not consider it inappropriate for the full court to be deciding this case at this time.

I

The ruling of the Chief Judge on the retroactivity question, and the vote sustaining the ruling and ratifying the decision to

rehear the appeal en banc, are consistent with the way in which at least one other circuit has dealt with the question of the retroactivity of recusals under 28 U.S.C. § 455(a). See *United States v. Widgery*, 778 F.2d 325, 328 (7th Cir.1985), and *United States v. Murphy*, 768 F.2d 1518, 1541 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986), which teach that such recusals are prospective only and do not invalidate prior judicial actions. Our decision to go forward with this proceeding en banc is also consonant with the Supreme Court's concept that voting on whether to rehear a case en banc "is essentially a policy decision of judicial administration," *Moody v. Albemarle Paper Co.*, 417 U.S. 622, 627, 94 S.Ct. 2513, 2516, 41 L.Ed.2d 358 (1974), and a policy decision as to which "each Court of Appeals is vested with a wide latitude of discretion to decide for itself just how that power shall be exercised." *Western Pacific R. Corp. v. Western Pacific R. Co.*, 345 U.S. 247, 259, 73 S.Ct. 656, 662, 97 L.Ed. 986 (1953). The end to be served by such decisions " 'is to enable the court to maintain its integrity as an institution by making it possible for a majority of its judges always to control and thereby to secure uniformity and continuity in its decisions....' " *United States v. American-Foreign Steamship Corp.*, 363 U.S. 685, 689–90, 80 S.Ct. 1336, 1339, 4 L.Ed.2d 1491 (1960) (quoting Maris, "Hear-ing and Rehearing Cases in Banc," 14 F.R.D. 91, 96 (1954)).

■ If it makes any difference whether recusal was mandatory in this case, it bears emphasis that the mere fact of recusal does not mean that the recusing judge had concluded that his recusal was mandatory. Section 455(a) of Title 28 requires disqualification only where a judge's impartiality "might reasonably be questioned." Here the recusing judge, who as a member of the lower house of the Ohio legislature was a sponsor of the Ohio Court of Claims Act, has never believed that his role as a legislator could reasonably draw into question his ability to participate impartially as a judge in this case. We are not required to decide whether he is correct in this, but we note that his view is consistent with the practice of the late Chief Justice Fred Vinson and the late Justices Harold Burton and Hugo Black, who as members of the United States Supreme Court routinely sat on cases involving legislation passed while they were members of Congress.[1] The recusal statute has embodied an "objective" standard only since 1974, to be sure, and views on judicial mores do sometimes change over time—see, *e.g.*, Philip Elman's oral reminiscences on "The Solicitor General's Office, Justice Frankfurter, and Civil Rights Litigation, 1946–1960," 100 Harv.L.

---

1. See also *In the Matter of Thomas W. Sullivan,* 283 Ala. 514, 219 So.2d 346, 353, *cert. denied,* 396 U.S. 826, 90 S.Ct. 70, 24 L.Ed.2d 76 (1969), ("A judge is not disqualified to try a case because he had been a member of the legislature enacting a statute involved in litigation before him, *Norton v. Lyon Van and Storage Co.,* 9 Cal.App.2d 199, 49 P.2d 311 [ (1935), *cert. denied,* 298 U.S. 662, 56 S.Ct. 746, 80 L.Ed. 1387 (1936) ]"); *Williams v. Mayor & Council of the City of Athens,* 122 Ga.App. 465, 177 S.E.2d 581 (1970), (affirming denial of a motion to disqualify a judge on the ground that as city attorney he had drafted an ordinance the constitutionality of which was under attack in his court); and *Newburyport Redevelopment Authority v. Commonwealth,* 9 Mass.App. 206, 401 N.E.2d 118, 144 (1980) ("There is no merit to the committee's contention that the judge should have disqualified himself because he had been a member of the House of Representatives when St. 1967, c. 702, was enacted.... [T]he validity of that statute was and is a pure question of law....").

Assuming that the recusing judge's sponsorship of the Ohio Court of Claims Act constituted a public expression of opinion on the constitutionality of the particular section of the law involved in this case, such an expression of opinion on a pure question of law in a context involving none of the parties to this case is comparable to a similar expression of opinion by a judge who has had occasion to address a particular question of law in a prior judicial opinion. Such expressions of opinion on legal issues are not disqualifying, any more than expressions of opinion on the merits of a case heard by a three-judge panel are disqualifying when the case is reheard en banc. Insofar as the case at bar may be thought to present a question of legislative intent, the recusing judge might well have considered the subjective intent of any individual legislator irrelevant, particularly in the absence of any legislative history illuminating that intent.

950

Rev. 817 (1987)—but aside from *Limeco, Inc. v. Division of Lime,* 571 F.Supp. 710 (N.D.Miss.1983), where a senior district judge recused himself from a case involving a bill for which he had voted as a legislator more than four decades earlier, we know of no published decision holding that the practice followed by Chief Justice Vinson and Justices Burton and Black is no longer permissible.

The plaintiff in this case did not move for recusal, moreover, notwithstanding that the judge who ultimately recused himself was on the bench throughout the oral argument and notwithstanding that his sponsorship of the Ohio Court of Claims Act was a matter of public record. The plaintiff's failure to move for recusal could be considered to have some marginal significance, perhaps, insofar as it may suggest that the plaintiff herself did not consider recusal mandatory. Mandatory or not, however, the question is now academic; acting on his own motion, the judge did in fact recuse himself.

■ Hardly less academic, in our view, is the question of retroactivity. There was no reason to ask the parties to brief the question of whether the recusal ought to have been deemed retroactive, because, by a large majority, the post-recusal court expressly ratified the vote for an en banc rehearing. What was ratified was not the ruling of the Chief Judge on the retroactivity question—that ruling was "sustained"—but the original action of the court in deciding that the case would be reheard en banc. Ratification, according to the common understanding, "is equivalent to a previous authorization and relates back to [the] time when [the] act ratified was done, except where intervening rights of third persons are concerned." Black's Law Dictionary (5th Ed.1979). When an absolute majority of the full court, acting without the recusing judge, voted "to ratify the action of the court in voting for an en banc rehearing," it was voting *nunc pro tunc* to rehear the case en banc.

If there had been no such ratification, if the recusal had been deemed retroactive, and if the panel decision had been reinstat-

ed without the full court having decided whether the panel decision was correct, any victory the plaintiff might have won in the district court on remand would almost certainly have proved Pyrrhic. Without counting the recused judge, there are eight active judges of this court who now believe that the district court ruled correctly in dismissing the action. Barring a change in the composition of the court, there is no reason to suppose that on a second appeal the court would not again have voted to hear the case en banc. This would put us exactly where we are now, except that the litigants and their counsel and the trial court would all have wasted a fair amount of time after the remand, and the litigants would have spent additional money, in order to get to a point where the full court of appeals would be prepared to say whether the district court reached the right result in dismissing the plaintiff's suit in the first place. We think the district court did reach the right result, and we see no common sense reason for postponing our decision on that question.

And so we turn to the merits of the appeal.

II

The Ohio Department of Mental Retardation hired Plaintiff Leaman as a case management specialist on December 12, 1983. Ms. Leaman was hired as a probationary employee whose appointment was not to become final, under Ohio Revised Code § 124.27, until she had satisfactorily served a probationary period fixed by regulation at 120 calendar days. Ms. Leaman's superiors did not consider her service satisfactory, and two of them signed a letter dated April 4, 1984, informing her that she was being removed from her position. The letter gave a number of reasons why it had been concluded that she could not meet the requirements of the job.

Ms. Leaman appealed her discharge to the State Personnel Board of Review, which dismissed the appeal. She then brought her federal court action, naming as defendants the Ohio Department of Mental Retardation and four of her superiors in

the department. The complaint alleged that Ms. Leaman had been discharged, in violation of her rights under the United States Constitution and the federal Rehabilitation Act, because she had expressed disagreement with controversial departmental policies regarding mildly retarded juveniles. The complaint sought reinstatement with backpay, an award of costs and attorney fees, injunctive relief, and punitive damages of $25,000 against each individual defendant.

An essentially identical complaint, stripped of claims against the individual defendants, was later filed against the department in the Ohio Court of Claims. That court dismissed the complaint, holding in a final appealable decision that Ms. Leaman's discharge was in accordance with state law. The Court of Claims also held that a probationary state job does not constitute "property" protected under the Due Process Clause of the Fourteenth Amendment. The Court of Claims was unmoved by Ms. Leaman's First Amendment and Rehabilitation Act claims, which in that court's view confused the real issue:

> "By what ever name the claims are made, this court construes it as an appeal challenging the judgment and decision of the state agency. The court could visualize situations where every person terminated during a probationary period could claim that his First Amendment Right of 'free speech' has been violated. This court highly questions whether that is the intent of the First Amendment. As to the 29 U.S.C. 794 and 794(A) [sic], these deal with the rights of handicapped persons. To permit a probationary worker who has worked in her probationary position for less than 120 days, and who obviously disagreed with her superiors to state a cause of action ... would, [in] this court's opinion, represent an entirely untenable position."

The Court of Claims commented, in conclusion, that a Section 1983 action appeared to have been brought in federal court "virtually contemporaneously," and the court confessed that it had "difficulty understanding why the case is pending in the Court of Claims involving the same issues

and the same party, namely the State of Ohio," when the issues "apparently are being determined in federal court."

Under Ohio Revised Code § 2743.20 and Rule 4 of the Ohio Rules of Appellate Procedure, the decision of the Court of Claims could have been appealed to the Ohio Court of Appeals for the Tenth Appellate District by the filing of a notice of appeal on or before June 7, 1985. Judge Rubin dismissed the federal action on May 14, 1985, some three weeks before the deadline for appealing the decision of the Court of Claims. Ms. Leaman did not appeal the Court of Claims decision, but did perfect an appeal to this court from the dismissal of her federal case.

Ms. Leaman contends that her filing of the Court of Claims suit could have had no adverse impact on her federal court action against the individual state employees, because the Ohio statute limited any waiver to claims arising under state law and because the statute itself made the waiver void in any event. In the alternative Ms. Leaman argues that the waiver provision is inconsistent with 42 U.S.C. § 1983, and may not be given effect because of the Supremacy Clause of the United States Constitution. We do not find either argument persuasive.

### III

The Ohio Court of Claims Act waives the state's sovereign immunity and declares that the state consents to be sued in the Court of Claims. Like most laws that embody compromises among conflicting interests, the statute does not represent a total victory for the class of people who gained the most from its enactment. Under the statute, as we have seen, claimants who might wish to take advantage of the state's waiver of its sovereign immunity are put on notice that the waiver will be effective as to them only if they themselves waive any cognate claims they might have against the state's employees. And the statute tells prospective suitors in the Court of Claims that the waiver of cognate claims will be "a *complete* waiver of *any*

cause of action ... which the filing party has against any state officer or employee." Ohio Revised Code § 2743.02(A)(1) (emphasis supplied).

■ The word "any," as used in the statute, is unambiguous. See *United States v. Winson,* 793 F.2d 754 (6th Cir.1986), holding that even under the strict construction accorded criminal statutes, the words "any court," as used in 18 U.S.C. § 922(h)(1), are "patently unambiguous" and do not exclude foreign courts. In providing that an election to sue the state in the Court of Claims results in a complete waiver of any cognate cause of action against individual state officers or employees, the Ohio legislature clearly provided for waiver of federal causes of action, as well as causes of action based upon state law. United States District Courts for both the Northern and Southern districts of Ohio have so held (*Ferrari v. Woodside Receiving Hospital,* 624 F.Supp. 899, 902 (N.D.Ohio 1985); *Leaman v. Ohio Department of Mental Retardation & Developmental Disabilities,* 620 F.Supp. 783 (S.D.Ohio 1985)), and their interpretation is correct, in our view, assuming it does not result in a conflict with federal law. For reasons explained in the next section of this opinion, we see no such conflict.

■ Ms. Leaman's principal argument that the waiver provision does not bar her federal action rests upon the final sentence of Ohio Revised Code § 2743.02(A)(1):

"The waiver [of claims against individual state employees] shall be void if the court determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

Ms. Leaman's federal complaint does not allege that the individual defendants who discharged her acted maliciously or outside the scope of their employment. Nonetheless, citing *Van Hoene v. State,* 20 Ohio App.3d 363, 486 N.E.2d 868 (Hamilton 1985) (where, despite the pendency of a suit in the Court of Claims, a complaint alleging that individual defendant employees had acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" was held not to be demurrable), Ms. Leaman maintains that her allegation that the discharge was unconstitutional necessarily implies that the discharge was *ultra vires* and malicious.

Even if the complaint is construed as alleging what Ms. Leaman now says it implies, however, the statute voids the waiver only if "the court" determines that the individual defendants acted outside the scope of their employment or maliciously. The words "the court" mean the Court of Claims. *Van Hoene, supra,* 486 N.E.2d at 872; *Smith v. Stempel,* 65 Ohio App.2d 36, 414 N.E.2d 445 (Franklin 1979), 3d Syl. In deciding, as it did, that the termination of Ms. Leaman's employment "was in accordance with the law," the Court of Claims can hardly be said to have determined that it was *ultra vires* or malicious.[2] This is dis-

2. It is true that the Court of Claims noted, merely "[b]y way of comment," that the department had been sued in a Section 1983 action the issues in which "apparently are being determined in a federal court." The Court of Claims had not seen the federal court complaint, was obviously unaware of the motion to dismiss the department on sovereign immunity grounds, and obviously did not intend to express any view on whether Ms. Leaman had waived her claims against individual state employees. The Court of Claims had no power to suspend the operation of the statute in any event.

Just as the Court of Claims did not address the waiver issue, neither does that court seem to have focused on the question whether its final decision that the Department had terminated Ms. Leaman's employment "in accordance with the law" would collaterally estop Ms. Leaman from asking another court to decide that the agents through whom the Department acted "in accordance with the law" somehow acted illegally as individuals.

Judge Merritt suggests, in his dissent, that "no meritorious § 1983 claim should ever be subject to the waiver," because, under Ohio law, conduct violative of § 1983 would always be *ultra vires* and thus could never subject the state to liability in a Court of Claims suit. We do not know whether the Supreme Court of Ohio would accept the premise of Judge Merritt's argument, but if the Court of Claims had accepted it in Ms. Leaman's case, and had held that the Department was not liable because its employees had acted against the law and thus outside the scope of their authority, under the

positive of Ms. Leaman's claim that the waiver is void under the terms of the statute, and so we come to the question whether the waiver may be given effect under federal law.

## IV

█ Ms. Leaman argues that application of the waiver provision of the Ohio Court of Claims Act "thwarted the broad remedial purpose underlying 42 U.S.C. Section 1983," and must therefore be invalidated under the Supremacy Clause of the United States Constitution. The argument relies heavily upon *Rosa v. Cantrell*, 705 F.2d 1208 (10th Cir.1982), *cert. denied*, 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983), which involved a Wyoming workers' compensation act that said that the rights and remedies provided in the act "are in lieu of all other rights and remedies...." Wyo. Stat. § 27–12–103(a) (1977). Insofar as the Wyoming statute purported to bar recovery against a municipal employer under § 1983, *Rosa v. Cantrell* held that it was in conflict with § 1983 and had to yield to the federal statute under the Supremacy Clause.

*Rosa v. Cantrell* and comparable workers' compensation act cases are not controlling here, in our judgment, precisely because the workers' compensation acts purport to bar actions brought in another forum under another statute, while the Ohio Court of Claims Act does not. In no way does the Ohio statute shut the doors of the federal courts on claimants who are unwilling to forego suit there. It does not deprive claimants of their federal forum. The Ohio statute simply offers to make available an otherwise unavailable deep-pocket defendant, and an alternative forum, if prospective plaintiffs who think they have claims against individual state employees voluntarily elect to waive suit against the employees in favor of suit against the employer.

"The law is clear that ... under the eleventh amendment, [states] are immune from [§ 1983] action[s] for damages or injunctive relief in federal court," *Abick v. State of Michigan*, 803 F.2d 874, 876 (6th Cir.1986), and the Constitution does not require the State of Ohio to offer *any* waiver of its sovereign immunity. *Cf. Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). We see nothing inconsistent with § 1983 in the offer the state has made in its Court of Claims Act. The Ohio statute gives claimants an option not otherwise available to them, and any claimant who does not like the statutory option is perfectly free to reject it and prosecute a § 1983 action against the state's officials just as if the Court of Claims Act had never been passed. Such an action may be maintained either in federal court or in an Ohio court of common pleas, without any necessity of filing an action in the Court of Claims. It is settled under Ohio law, moreover, that the Court of Claims Act would not prevent such a claimant from seeking declaratory or injunctive relief against the Department of Mental Retardation itself, again without any necessity of suing in the Court of Claims. *Friedman v. Johnson*, 18 Ohio St.3d 85, 87, 480 N.E.2d 82, 84 (1985); *Racing Guild of Ohio v. Ohio State Racing Commission*, 28 Ohio St.3d 317, 503 N.E.2d 1025 (1986), 1st Syl.

If in the case at bar the defendant officials had pleaded and proved an accord and satisfaction—if they had shown that Ms. Leaman had given them a written release of all claims in exchange for a monetary consideration—the defendants would surely have been entitled to a dismissal, and surely the dismissal could not be thought to frustrate the policy underlying § 1983. In practical effect the Ohio Court of Claims Act is a standing offer for a settlement of claims against state employees in exchange for an otherwise non-existent opportunity to sue the state itself for damages.

express terms of the Ohio statute Ms. Leaman's waiver of her claims against the individual employees would have been "void." In fact, the Court of Claims held just the opposite; it held that the discharge was "in accordance" with the

law, not against the law. Ms. Leaman did not choose to appeal that decision, and she might well have had to live with it even if there had been no waiver provision in the Ohio statute.

The constitutionality of such an offer can hardly be doubted in light of *Town of Newton v. Rumery,* 480 U.S. ——, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), where the Supreme Court, applying "traditional common-law principles" incorporated in federal law, 480 U.S. at ——, 107 S.Ct. at 1192, 94 L.Ed.2d at 415, held that a man who accepted a municipality's offer to dismiss criminal charges against him in exchange for a waiver of any claims he might have against the town and its officers could not repudiate the waiver and sue the town and its officers under 42 U.S.C. § 1983. The Supreme Court flatly rejected the argument that agreements such as that accepted by Mr. Rumery are "inherently coercive," and thus invalid per se; Mr. Rumery's voluntary decision to accept the town's offer, the Court said, reflected "a highly rational judgment" that the obvious and certain benefits offered by the agreement would "exceed the speculative benefits of prevailing in a civil action [under § 1983]." 480 U.S. at ——, 107 S.Ct. at 1193, 94 L.Ed.2d at 417.

The inducement offered for Ms. Leaman's waiver (an opportunity to bring a direct action for damages against the State of Ohio) obviously lacked the potential for coercion inherent in the inducement (dismissal of criminal charges) offered for the waiver in *Rumery.* That being so, the benefits offered in the Ohio Court of Claims Act being no less "obvious" than those offered Mr. Rumery, and Ms. Leaman's election to accept Ohio's offer being no less "rational" than the election made by Mr. Rumery, we think the district court's decision to dismiss Ms. Leaman's case was even more clearly correct than the corresponding decision in Mr. Rumery's case.

In holding Ms. Leaman to her bargain, the district court clearly did not labor under the misapprehension that the voluntary waiver of a federal civil rights claim somehow amounts to a waiver of federal court *jurisdiction.* Under the terms of the Ohio statute, acceptance of the statutory offer results not in a waiver of federal jurisdiction to entertain suits against state employees, but in a waiver of "any cause of action" the waiving party may have against such employees. Where a claimant elects to sue the state in the Court of Claims, in other words, the state's employees are given an affirmative defense which the federal court has both the jurisdiction and the duty to recognize. This case did not present a situation in which the federal courts had been deprived of jurisdiction, any more than *Rumery* did; here, as in *Rumery,* the defendants were entitled to judgment not because the court had no jurisdiction, but because the plaintiff had no case.

Judge Rubin explicitly declared that the dismissal of Ms. Leaman's action was for failure to state a claim, as opposed to any want of jurisdiction:

> "In exchange for [waiver of her claims against officers and employees of the state], Plaintiff received a solvent Defendant. There being no statutory or constitutional impediment to such an arrangement, this Court will hold Plaintiff to her *quid pro quo* and dismiss the individual Defendants for failure to state a claim against them." *Leaman,* 620 F.Supp. at 786.

The *quid pro quo* received by Ms. Leaman was not illusory, and the bargain she accepted was not unfair. As this court has heretofore recognized, the Ohio Court of Claims Act does not constitute a waiver by the state of its sovereign immunity "with respect to actions pending in federal or other state courts." *Ohio Inns, Inc. v. Nye,* 542 F.2d 673, 681 (6th Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977). Ohio was under no constitutional duty to let itself be sued at all, and it was not unreasonable for the state to tell prospective plaintiffs—in words not unlike those used by the United States itself in the Federal Tort Claims Act—"we will agree to let you sue the sovereign if you will agree to surrender your claims against the sovereign's servants." When one considers the depth of the sovereign's pockets in comparison to the depth of the servants', and when one remembers that Ms. Leaman was *not* required to give up her right to seek reinstatement through an injunction suit

against the Department of Mental Retardation, it is hard for us to see how the state could possibly be thought to have been guilty of overreaching.

It is the reasonableness of the choice offered prospective plaintiffs like Ms. Leaman that prevents the Ohio Court of Claims Act from running afoul of the "unconstitutional condition" doctrine to which Mr. Justice Sutherland gave eloquent expression in *Frost & Frost Trucking Co. v. Railroad Commission of California*, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101 (1926). There the State of California had told private truckers operating under private contracts of carriage that they could not use the public highways of the state unless they agreed to become common carriers. "In reality," the Court said, "the carrier is given no choice, except a choice between the rock and the whirlpool,—an option to forego a privilege which may be vital to his livelihood or submit to a requirement which may constitute an intolerable burden." *Id.* at 593, 46 S.Ct. at 607.

However one may assess the contrast between *Frost & Frost Trucking and Rumery*, bearing in mind that the choice offered Mr. Rumery was a choice between waiving his § 1983 claim and risking jail, the contrast between *Frost & Frost Trucking* and the case at bar is a striking one. Here Ms. Leaman was told that she could reject the offer made in the Court of Claims Act, suing the individual state employees for damages under § 1983 just as if the Court of Claims Act had never been passed at all, or she could choose to avail herself of an opportunity not available before the Court of Claims Act was passed— the opportunity to exchange her damage claim against the state's employees for a damage claim against the State itself. That, it seems to us, is a reasonable and meaningful choice; it is not a choice between "the rock and the whirlpool," and it bears no resemblance to the choice offered customers of the late Mr. Hobson or the offer that associates of Mr. Puzo's Godfather could not refuse.

The mere fact that the Ohio Court of Claims Act offered Ms. Leaman a choice not available to her before its enactment does not *ipso facto* make the Act unconstitutional, of course, and Ohio Revised Code § 2743.02(A)(1) no more puts justice on the auction block than does its counterpart in the Federal Tort Claims Act, 28 U.S.C. § 2676. Under federal law a tort claimant who wishes to sue the United States for damages under 28 U.S.C. § 1346(b) is put on notice by 28 U.S.C. § 2676 that any judgment in such an action will constitute "a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." If that provision of federal law does not sully the skirts of justice with the detritus of the marketplace, neither does the waiver provision of the Ohio Court of Claims Act.

A prospective federal tort claimant may choose not to sue the United States itself, just as Ms. Leaman might have chosen not to sue the State of Ohio, and one who does not pursue his remedies against the federal government is not required to give up any claim he may have against the federal government's servants; but one who pursues his statutory remedies against the United States to the point of judgment— even an adverse judgment or a judgment for only a small part of the amount claimed—bars himself from any recovery against federal employees. Such a result has not struck this court or other federal courts as anomalous, even where the claim thus barred arises under the Constitution itself. *Serra v. Pichardo*, 786 F.2d 237 (6th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 103, 93 L.Ed.2d 53 (1986); *Arevalo v. Woods*, 811 F.2d 487 (9th Cir.1987). It is fair to say, moreover, that the Supreme Court of the United States has not always gone out of its way to interpret the Federal Tort Claims Act in favor of giving claimants a right to sue the government, even where the language of the Act itself might seem to provide a reasonably clear right of suit. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *United States v. Johnson*, — U.S. —, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987). Where the language of a governmental claims act ap-

pears to bar recovery against the government's servants, therefore, it seems unlikely that the Supreme Court would go out of its way to interpret the statutory language otherwise, as long as the right to sue the government itself is clear. As the Supreme Court recently had occasion to remind us, "[j]udicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what [the legislature] has plainly and intentionally provided." *Commissioner of Internal Revenue v. Asphalt Products Co., Inc.*, — U.S. ——, 107 S.Ct. 2275, 96 L.Ed.2d 97 (1987).

■ Under any interpretation, the Federal Tort Claims Act, like the Ohio Court of Claims Act, offers claimants a better deal than they would have without it. Neither statute forces any claimant to accept the government's statutory offer, and both statutes, far from requiring that any claimant's constitutional rights be bartered away, afford claimants a superior mechanism for vindicating their rights. Constitutional rights may not be extinguished by any statute, state or federal, but this truism does not mean that suits or potential suits for alleged violations of such rights may not be compromised or waived. See *Home Insurance Company of New York v. Morse*, 87 U.S. (20 Wall.) 445, 451, 22 L.Ed. 365 (1874) ("... any citizen may no doubt waive the rights to which he may be entitled"). And the long line of cases holding that a state may not require foreign corporations to surrender their right to remove actions against them to federal court as a condition of doing business within the state—a line that includes *Harrison v. St. Louis & San Francisco R.R. Co.*, 232 U.S. 318, 34 S.Ct. 333, 58 L.Ed. 621 (1914)—teaches nothing to the contrary, as the decision in *Rumery, supra,* confirms.

■ It remains to be considered, however, whether the district court erred, in the case at bar, in finding that "[b]y filing in the Ohio Court of Claims, Plaintiff has

made a knowing, intelligent, and voluntary waiver of her right to bring claims against officers and employees of the state." *Leaman,* 620 F.Supp. at 786. The finding that the waiver was "knowing, intelligent, and voluntary" presumably rests upon the fact that Ms. Leaman was represented by competent counsel when she filed her action in the Court of Claims, and counsel must be presumed to have known what the Court of Claims Act said. Under the circumstances of this case, we consider this an adequate foundation for the finding of voluntariness.

Ms. Leaman was not pleading guilty to criminal charges, or waiving her right to counsel in a criminal case, and it was not incumbent upon the court to make sure that her lawyer had adequately explained the effect of her action. Ms. Leaman was trying to recover a favorable judgment as a plaintiff. It was perfectly reasonable, in our view, to rely on Ms. Leaman's counsel for strategic advice on how best to accomplish that objective. See *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976), where, notwithstanding that the party whose constitutional rights were waived was the defendant in a criminal trial, the Supreme Court declared, in holding habeas relief unavailable, that

"[u]nder our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system."

Ms. Leaman's counsel must be deemed to have known that the price of suing the state in the Court of Claims would be the surrender of Ms. Leaman's punitive damage claims against her superiors in the Department of Mental Retardation, unless the Court of Claims could be persuaded that those individuals acted outside the scope of their employment or maliciously.[3] It was not the duty of any court to explore

---

**3.** The price seems small enough when one recalls that a finding of malice by the Court of Claims would have enabled Ms. Leaman to proceed with her punitive damage claims against the individuals—and absent malice, the claims had no merit anyway.

the adequacy of communication between client and counsel before permitting the complaint in the Court of Claims suit to be accepted for filing. And where a claimant represented by competent counsel has elected to accept Ohio's statutory offer to subject itself to suit in the Court of Claims in exchange for a waiver of claims against individual state officials, nothing in the Constitution entitles the claimant to repudiate the waiver if she or he loses the suit in the Court of Claims and does not even appeal the decision.

The judgment of the district court is AFFIRMED.

LIVELY, Chief Judge, concurring and dissenting.

I concur in that portion of the majority opinion holding that the decision of a judge of this court to withdraw from further participation in en banc proceedings following rehearing does not relate back and nullify that judge's earlier vote to rehear this case en banc. However, I dissent from the decision of the majority on the merits which affirms the district court's dismissal of this § 1983 case.

## I.

The vote in favor of rehearing this case was 8 to 7, with all active judges voting. The judge who recused himself from participating in the en banc decision of this case did so shortly after oral argument on rehearing. He stated that he was recusing himself from "further" participation. The tentative vote of the court at conference was 8 to 7 in favor of affirming the district court, with the judge who subsequently filed the notice of recusal voting with the majority. His recusal left the court with an apparent tie vote. However, the vote at conference is always tentative. Another member of the en banc court notified all members of the court that he intended to change his conference vote from reversal of the district court judgment to affirmance. No other judge changed his or her vote, leaving the court split 8 to 6 for affirmance.

The matter was debated at a court meeting. Two alternatives were proposed. Several judges argued that the original vote to rehear the case was a nullity because the judge's later recusal should relate back and cancel his vote in favor of rehearing the case. Other judges argued that the case was properly reheard en banc and that the subsequent recusal of a judge had no effect on that judge's prior vote to rehear the case. The chief judge ruled that the later recusal did not nullify the recusing judge's prior participation in the en banc procedures. This ruling was upheld by an 11 to 3 vote and the case was assigned to a judge to prepare a proposed disposition. It was pointed out that every judge would have an opportunity to vote finally when the proposed opinion was circulated and to express disagreement with the resolution of the en banc procedural issue.

The en banc procedures of this court are controlled by statute (28 U.S.C. § 46(c) (1982)), a national rule (Rule 35, Fed.R. App.P.) and a local rule (Rule 14, Rules of the Sixth Circuit). Several steps are involved in designating a particular case for rehearing en banc.

Either a party or any judge who would sit on the en banc court may "suggest" that a case is appropriate for rehearing en banc. Rule 35(b), Fed.R.App.P.; Rule 14(a), Rules of the Sixth Circuit. No action is taken on the suggestion unless a judge who is in regular active service or a judge sitting by designation who was a member of the panel that rendered the original decision requests a vote on the suggestion. Rule 35(b), Fed.R.App.P. When such a request is received, the active judges of the court vote by ballot, and a majority of all judges in regular active service must vote in favor of the request before rehearing en banc may be ordered. Rule 35(a), Fed.R. App.P.; 28 U.S.C. § 46(c). A vote to rehear a case en banc has the effect of vacating the previous opinion and judgment of the court, staying the mandate and restoring the case on the docket as a pending appeal. Rule 14(a), Rules of the Sixth Circuit. The court that rehears the case en banc consists of all circuit judges in regu-

lar active service and any senior circuit judge of the circuit who was a member of the panel whose decision is being reviewed en banc and who elects to participate. 28 U.S.C. § 46(c).

Since eligibility to participate in the various steps leading to rehearing en banc is not the same for each step, eligibility is determined by a judge's status at the time a particular step is reached. Thus, a judge who is in regular active service when a suggestion for rehearing en banc is made, but who was not on the panel whose decision is suggested for review, may request a vote. However, if that judge assumes senior status before the vote is taken he or she is not eligible to vote. Further, if the same judge retains active status during the vote, and assumes senior status after voting but before the rehearing is held, that judge is not eligible to participate in the rehearing. Recusals should be treated no differently. A judge who determines, for whatever reason, to refrain from participating at any stage of en banc proceedings withdraws as of that time. Recusal does not act retroactively to nullify the judge's previous participation. Each stage of the en banc proceedings is distinct, and the requirements must be met serially. This case was properly reheard by the en banc court.

## II.

I concur in Judge Merritt's dissent on the merits, and write separately to point out an additional basis for reversing the district court's dismissal of this action.

Ms. Leaman sought to vindicate First Amendment rights by bringing an action in federal district court under 42 U.S.C. § 1983. The four individuals that she charged with infringing her constitutional rights were her supervisors. She could not sue these persons in the Ohio Court of Claims. I do not believe Ohio could legally require Ms. Leaman to give up her right to seek relief from these individuals as a *quid pro quo* for taking advantage of the State's limited waiver of sovereign immunity that permits her to seek damages from the State in the Court of Claims.

The Eleventh Amendment prohibits federal court actions against states. However, the Supreme Court created a "fiction" in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which permits an injunction against a state official who has acted unconstitutionally, because an official so acting no longer represents the state. In this case Ms. Leaman sought prospective relief in the form of an injunction against continuation of unlawful conduct described in the complaint, reinstatement to her position, and other equitable relief in addition to damages. This equitable relief could be granted by a federal court without violating the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The State's sovereign immunity would not be implicated by granting this relief against the individual defendants even though they were sued in their official capacities. *Id.* at 664, 94 S.Ct. at 1356. The fact that the Ohio Court of Claims provides a "deep pocket" for a plaintiff's demand for money damages is irrelevant. The state cannot prohibit the plaintiff from seeking the equitable relief that is properly available in a federal court for infringement of her constitutional rights.

I would reverse the judgment of the district court.

KEITH, Circuit Judge, dissenting, joined by NATHANIEL R. JONES, Circuit Judge.

In this case, the majority exalts a state waiver provision above a plaintiff's right to seek relief for unconstitutional acts, rewards a litigant's diligent pursuit of 42 U.S.C. § 1983 remedies with total exclusion from a state *or* federal forum and characterizes the effect of its holding in terms of a simple contractual metaphor, as if Constitutional rights are bushels of wheat and the Constitution itself the Restatement (Second) of Contracts. I dissent.

Section 1983 permits an aggrieved citizen to seek relief in court for the unconstitutional acts of state or local government officials acting under color of state law. A cause of action under § 1983 is therefore not like a breach of contract action. The

latter seeks a remedy for the violation of a contract between two discrete parties. The former, however, is predicated on a compact that does nothing less than allocate power between the government and the governed. Limitations by the government on a citizen's access to § 1983 relief must therefore be carefully scrutinized, since, by the very nature of a § 1983 action, the government is an interested party and the interests affected are of constitutional magnitude. The majority opinion fails to recognize this point. It subordinates the exercise of § 1983 relief for the "deprivation of any right, privileges, or immunities secured by the Constitution and laws" to the operation of a state claims waiver provision. In so doing, the majority deprives Ms. Leaman of any forum for her claims and does violence to the supremacy of federal law.

When courts are faced with the resolution of an inconsistency between state and federal law, the policies behind the federal law must be taken into account. The crucial question "is whether the *application of state law* would be inconsistent with the federal policy." *Robertson v. Wegmann*, 436 U.S. 584, 590, 98 S.Ct. 1991, 1995, 56 L.Ed.2d 554 (1978) (emphasis added) (*quoting Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)). Such an analysis is particularly important when the application involves the waiver of federal rights, i.e., the right to file suit under § 1983. *Town of Newton v. Rumery*, — U.S. —, —, 107 S.Ct. 1187, 1192, 94 L.Ed.2d 405 (1987) *reversing and remanding* 778 F.2d 66 (1st Cir.1985); *Robertson v. Wegmann; McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971); *Rosa v. Cantrell*, 705 F.2d 1208 (10th Cir.1982).

In our analysis, therefore, the "purport" of the Ohio statute should not be at issue. We should not be concerned with the reasonableness of the waiver provision or the appropriateness of the Ohio state legislature's judgment on waiver of sovereign immunity. Rather, we should focus on the provision's "application in the face of a claim of civil rights guaranteed [the plaintiff] by federal law" *Robertson*, 436 U.S. at 600, 98 S.Ct. at 2000 (Blackmun, J. dissenting). Our analysis should balance the *policies* behind the federal law against the *application, in this specific case*, of the waiver provision.

With regard to Ms. Leaman, the most important policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law. *Robertson*, 436 U.S. at 591, 98 S.Ct. at 1995. Neither is furthered by the operation of Ohio's waiver provision. Ms. Leaman cannot be compensated because she no longer has a forum to pursue her constitutional claims, as a result of the district court's dismissal. She is being whipsawed, in effect, between the district court's dismissal and the Ohio waiver provision. Nor are Ohio state officials prevented or deterred from abusing state authority in violation of the Constitution. The operation of the waiver provision, as construed by the majority, effectively insulates those officials from the reach of any § 1983 claim, including Ms. Leaman's, whenever a suit is filed in the Ohio Court of Claims.

These results cannot be those envisioned by Congress when it constructed the "broad sweep" of § 1983 and its companion civil rights statutues. *See Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The majority's analysis invites such mistaken outcomes, however, when it justifies the denial of the § 1983 remedy on the ground that Ms. Leaman "exchanged" the remedy for the right to sue the State of Ohio in its Court of Claims. Constitutional rights and their federal law remedies cannot be bartered or "exchanged", like so many bushels of wheat for so many dollars. Rather, they must be carefully scrutinized on a case-by-case basis. Such close scrutiny will insure that the fundamental values which the rights and remedies protect are not harmed by the unwise operation of a state's law. Most importantly, our highest function as judges is to uphold the Constitution. I cannot comprehend how that function is fulfilled when the very statute which per-

mits the enforcement of Constitutional rights rises and falls on the contractual principle of accord and satisfaction.

The majority's opinion is part and parcel of an unwise tendency on this Court to narrow the § 1983 remedy to the point of nullity. We have held that § 1983 relief is not available for the deprivation of liberty or of property. *See Wilson v. Beebe,* 770 F.2d 578 (6th Cir.1985) (Keith, J. dissenting in part, concurring in part). Now we find § 1983 relief to be conditioned on the operation of a state waiver provision. If this Circuit continues to follow the path it has started upon, there will be nothing left to § 1983. We will have stripped § 1983 of its basic fibre and meaning. That outcome may be comforting to some, but it is anathema to anyone who holds Constitutional rights dear. Hopefully, a higher and wiser court will correct the majority's decision.

MERRITT, Circuit Judge, dissenting.

This case involving the "waiver" provision of the Ohio Court of Claims Act raises two major questions. The first is whether the Ohio statute should be construed so as to apply a waiver rule that would oust a federal court of federal question jurisdiction in civil rights cases. The second is whether a judge's decision to recuse himself in a case involving legislation which he drafted as a legislator arises only after the judge has voted to rehear the case en banc and then only as a matter of individual judgment. In my view, these questions must be answered in the negative.

The Court's opinion on the merits needlessly creates constitutional conflict with the unwarranted effect of limiting the jurisdiction of federal courts, and in its procedure validates or "ratifies" the actions of a conflicted judge in not exercising a mandatory legal duty of recusal prior to voting to rehear a case en banc. Substantively, the Court falsely frames the debate in terms of "marketplace" tradeoffs, a facile way of avoiding the important constitutional dimensions of the case. Procedurally, the majority would have us adopt a permissive attitude on recusal. I do not accept the Court's position: on the waiver issue, it undermines our system of separation of powers, and on the recusal matter, it could diminish public confidence in the integrity and independence of the federal judiciary. I therefore dissent.

I.

The Court proceeds erroneously on the premise that access to the federal courts can be bargained away by operation of the waiver provision in the Ohio statute. It posits a marketplace for adjudication where "[i]n practical effect the Ohio Court of Claims Act is a standing offer for a settlement of claims against state employees in exchange for an otherwise non-existent opportunity to sue the state itself for damages." Opinion of the Court at p. 953. Unfortunately, such a marketplace theory or metaphor for adjudication is contrary to a proper view of the federal jurisdiction firmly established in decisions of the Supreme Court.

The state legislature's use of the phrase "any cause of action" in its waiver provision does not mean that the state legislators should be held to have intended, or that the statute should be read, to bar, withdraw or "waive" exercise of the *federal* judicial power in these cases. Without a real contract, a state cannot strike a figurative "bargain" with a prospective federal litigant and have such "contract" be enforceable in a federal court as a matter of law. The federal courts cannot be deprived of their jurisdiction in this manner.

In analyzing this case on the basis of marketplace metaphors rather than the required constitutional analysis, the Court creates unnecessary constitutional conflict when it permits the state statute to deprive the federal courts of their jurisdiction in civil rights cases. Acts of Congress such as 42 U.S.C. § 1983 and 28 U.S.C. § 1343 define the jurisdiction of the federal courts in civil rights cases, and the Constitution prevents the states from withdrawing or limiting federal jurisdiction by the adoption of waiver or election of remedies rules. As the Supreme Court stated in *Home Insurance Co. v. Morse:*

The Constitution of the United States declares [in Art. 3, § 2] that the judicial power of the United States shall extend to all cases in law and equity arising under that Constitution, laws of the United States, and to the treaties made or which shall be made under their authority, ... to controversies between a State and citizens of another State, and between citizens of different States.

The jurisdiction of the Federal courts, under this clause of the Constitution, depends upon and is regulated by the laws of the United States. State legislation cannot confer jurisdiction upon the Federal courts, *nor can it limit or restrict the authority given by Congress in pursuance of the Constitution.* This has been held many times.

87 U.S. (20 Wall.) 445, 453, 22 L.Ed. 365 (1874) (citations omitted) (emphasis added).

The reasoning in *Home Insurance* respecting Article III is underpinned by the Supremacy Clause.[1] State limitations on federal jurisdiction are prohibited under this Clause where they frustrate laws passed by Congress that contain express grants of federal jurisdiction, such as the federal civil rights statutes. The Supremacy Clause is particularly relevant in the federal civil rights context in light of the clear congressional desire to empower the federal courts in this area. This congressional intent is reflected in the legislative history of the antecedent to § 1983. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 502–07, 102 S.Ct. 2557, 2561–63, 73 L.Ed.2d 172 (1982).

In a long line of cases, the Supreme Court has invalidated state requirements that foreign corporations surrender their right to remove cases to federal courts as a condition of doing business within the state. In *Harrison v. St. Louis & San Francisco Railroad*, 232 U.S. 318, 328, 34 S.Ct. 333, 335, 58 L.Ed. 621 (1914), the Supreme Court framed the issue as follows:

It may not be doubted that the judicial power of the United States as created by the Constitution and provided for by Congress pursuant to its constitutional authority, is a power wholly independent of state action and which therefore the several States may not by any exertion of authority in any form, directly or indirectly, destroy, abridge, limit or render inefficacious. The doctrine is so elementary as to require no citation of authority to sustain it.

*Accord Terral v. Burke Constr. Co.*, 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352 (1922); *Donald v. Philadelphia & Reading Coal and Iron Co.*, 241 U.S. 329, 36 S.Ct. 563, 60 L.Ed. 1027 (1916); *Home Ins. Co. v. Morse*, 87 U.S. (20 Wall.) 445, 22 L.Ed. 365 (1874); *see also Payne v. Hook*, 74 U.S. (7 Wall.) 425, 19 L.Ed. 260 (1868) (state cannot defeat federal jurisdiction by confining jurisdiction of issue to specialized state court).

The Court attempts to evade the obvious Supremacy Clause problem posed by such a divestiture of federal jurisdiction by arguing that the statute creates an implicit waiver "contract."[2] Although under appropriate circumstances an individual may release her § 1983 claims by written contract, it is impermissible for a state to create a statutory framework which *automatically* operates to waive federal jurisdiction. *See Town of Newton v. Rumery*, —— U.S. ——, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (written waiver valid in certain circumstances). The Supreme Court is clear and explicit that "waiver" of § 1983 claims "is a question of federal law." *Town of Newton*, 107 S.Ct. at 1192. There may also be a presumption against an indi-

---

**1.** This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
U.S.Const., Art. VI, cl. 2.

**2.** The Court also argues that the existence of a similar provision in the Federal Tort Claims Act removes constitutional doubt from the Ohio statute. Opinion of the Court at p. 955. This position taken by the Court ignores the fact that the problem posed by the Ohio statute stems from the Supremacy Clause—a concern not implicated by Congressional action.

vidual's "waiver," even when executed by written release, which serves to limit the power of the federal courts. *See id.* at 1205 (Stevens, J., dissenting); *see also id.* at 1196–97 (O'Connor, J., concurring) (defendant bears burden of proving that contract of waiver voluntarily made).

The Court states that the federal court has a duty to recognize the affirmative defense supposedly created by the Ohio statute. This affirmative defense apparently flows from an implicit waiver contract created by the statute. While the federal courts may recognize waiver contracts to limit an individual's right to bring a § 1983 claim in certain limited circumstances, five members of the Supreme Court in *Town of Newton* emphasized that at a minimum the waiver agreements are subject to strict requirements that they be entered into knowingly, intelligently and voluntarily, and that the burden is on the defendant to prove the waiver in question meets this strict requirement.

We emphasize that here there is no written waiver contract, and the "waiver" is by operation of state law; hence this case is more problematic than that presented in *Town of Newton.* The problems presented by the court's interpretation of the Ohio scheme resemble those of classic contracts of adhesion: by entering the doors of the Ohio Court of Claims, the claimant automatically becomes a party to an agreement which the claimant may not know of or accept.

The scheme of automatic waiver proposed by the Court does not comport with the strict requirements for waiver set forth in *Town of Newton* and the mere fact that Ms. Leaman was represented by counsel cannot save it. A written contract serves as evidence that a litigant's decision to waive federal jurisdiction was entered into with some reflection as to its benefits and detriments. There is no such evidence here; in fact, the record indicates that all parties concerned—including the state judge—understood that her claim *would* be heard by a federal court. As the Supreme Court stated half a century ago, "we do not presume acquiescence in the loss of funda-

mental rights." *Ohio Bell Tel. v. Public Utilities Comm'n,* 301 U.S. 292, 307, 57 S.Ct. 724, 731, 81 L.Ed. 1093 (1937). Moreover, as to fundamental rights, "courts indulge every reasonable assumption against waiver." *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937).

It may be true in a diversity case after *Erie* that the doors of the federal courts are closed to state claims if the state would not entertain the claim, but a *federally*-created right should be heard in federal court even if the state has closed its doors to the parties. *Angel v. Bullington,* 330 U.S. 183, 192, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947). The reason for this rule is that otherwise a state would be able to obstruct and frustrate the obligations created by federal law. For example, in the workers' compensation area, courts have looked askance at exclusive remedy provisions interfering with federal constitutional claims. As the court stated in a § 1983 action, "[t]o allow defendants here to escape liability by relying on state law defenses certainly interferes with the basic social policy which favors the enforcement of federal civil rights and it would also interfere with the policy of preventing abuses of power by those acting under color of state law." *Rosa v. Cantrell,* 705 F.2d 1208, 1221 (10th Cir.1982), *cert. denied,* 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983); *see also McClary v. O'Hare,* 786 F.2d 83 (2d Cir. 1986).

We should thus decline to interpret the state statute in question here to create an implicit waiver contract that a federal court would have a duty to recognize. A prospective federal litigant cannot be deprived of the right to pursue a federal cause of action to vindicate constitutional rights by automatic operation of a state statute. We must therefore examine how the Ohio statute operates in practice to determine whether the waiver provision actually serves to limit federal jurisdiction in violation of the Supremacy Clause.

## II.

The Court reads the state statute in a fashion that is inconsistent with interpreta-

tions rendered by the Ohio courts, and thus creates a needless conflict with the Supremacy Clause. Under Ohio law, it is not clear that a § 1983 action would ever trigger the Ohio waiver provision. Rather, rulings from the Ohio courts indicate that the constitutional violations which form the basis for the § 1983 action would be outside the scope of employment and therefore not waived. There is therefore no actual conflict between the Ohio law and federal jurisdiction.[3]

Ohio case law is clear that merely filing a Court of Claims suit does not create an irrevocable waiver under Ohio Rev.Code Ann. § 2743.02(A)(1) (Baldwin 1986). Rather, the waiver becomes inoperative when the Court of Claims determines that "the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev.Code Ann. § 2743.02(A)(1) (Baldwin 1986); *McIntosh v. University of Cincinnati*, 24 Ohio App.3d 116, 120, 493 N.E.2d 321, 324–25 (1985).

The Ohio courts have so narrowly defined the scope of employment for public employees that no meritorious § 1983 claim should ever be subject to the waiver. In *Berke v. Ohio Department of Public Welfare*, 52 Ohio App.2d 271, 273, 369 N.E.2d 1056, 1058 (1976), the Court held that it is "clearly ultra vires" for a state employee to discriminate because of sex, religion, or national origin. In *Tyus v. Moritz*, 52 Ohio App.2d 143, 145, 368 N.E.2d 846, 848 (1976), the Court held that "any negligence, slander, or medical malpractice would plainly not be within the scope of supervision or within the scope of authority ... [and] would be ultra vires by such employees." In an unpublished decision, another Ohio appellate court observed that jurisdiction in the Court of Common Pleas is proper when the alleged conduct "is intentionally tortious and therefore outside of the scope of the state employee's employ-

ment." *Shew v. Greene*, No. CA85–07–041 (Ohio App., May 27, 1986) (Westlaw, OH–CS database, at 4). Given the type of conduct excluded from the scope of employment in the foregoing cases, no meritorious § 1983 claim should be subject to the waiver provision of Ohio Rev.Code Ann. § 2743.02(A)(1) (Baldwin 1986).

As long as Ohio maintains its restrictive view of the scope of public employment, the only source of conflict between federal and state courts in this case is the normal friction caused by concurrent jurisdiction. The mere existence of concurrent jurisdiction is not itself a problem since § 1983 suits may be brought in state court. The question is whether Ohio's assertion of jurisdiction actually conflicts with federal law. Again, we look to Ohio's interpretation of its own statute to determine the extent of any conflict.

When concurrent suits are filed in the Court of Claims and the Court of Common Pleas, the State of Ohio has instructed the latter tribunal to stay its proceeding until the Court of Claims rules on the scope of employment issue. *McIntosh v. University of Cincinnati*, 24 Ohio App.3d at 120, 493 N.E.2d at 324–25; *Smith v. Stempel*, 65 Ohio App.2d 36, 41–42, 414 N.E.2d 445, 449 (1979). A federal court could reach the same result under well-established principles of abstention. *See England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Thus, there is no conflict in this instance between the state and federal law that coordinates the disposition of concurrent suits.

### III.

The final question raised by this case concerns what effect a federal court will give a prior Court of Claims' determination on scope of employment. As a legal matter this question is hardly novel. For almost 200 years the federal courts have

---

**3.** In footnote 2 of its opinion, the Court concedes that if constitutional violations sufficient to form the basis for § 1983 claims are deemed by the Ohio courts to be outside the scope of employment, there would be no waiver and therefore no conflict between the Ohio statute and federal jurisdiction.

developed principles of res judicata and collateral estoppel in order to accommodate dual federal and state jurisdiction. This is the body of legal principles that we should use to resolve the present dispute, instead of an analysis that relies on a feather's weight of Ohio authority and a misplaced marketplace metaphor.

In footnote 2 of its opinion, the Court states that there was no waiver in this case because the Court of Claims held that the "discharge was in accordance with the law, not against the law." The Court seems to ignore the fact that before any such "finding" by the Court of Claims can have preclusive effect in this action, it must be judged by principles of res judicata and collateral estoppel.

Under res judicata, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The related doctrine of collateral estoppel, or issue preclusion, dictates that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.; see also id.* at 94 n. 5, 101 S.Ct. at 415 n. 5 (citing Restatement (Second) of Judgments § 74 (Tent. Draft No. 3, Apr. 15, 1976) for use of term "claim preclusion" as equivalent to res judicata and "issue preclusion" for collateral estoppel).

Collateral estoppel cannot apply, however, unless the party against whom the earlier decision is asserted had a "full and fair opportunity" to litigate the issue in the earlier case. *See Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983); *Allen v. McCurry*, 449 U.S. at 95, 101, 101 S.Ct. at 415, 418; Restatement (Second) of Judgments § 29 (1982). The rationale behind claim and is-

sue preclusion is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and to encourage reliance on adjudication by preventing inconsistent decisions. *See Allen v. McCurry*, 449 U.S. at 94, 101 S.Ct. at 415 (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)).

Congress has passed legislation which requires federal courts to give preclusive effect to state court judgments. The Constitution's Full Faith and Credit Clause [4] is implemented by the federal full faith and credit statute, 28 U.S.C. § 1738 (1982). The statute provides in pertinent part:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

It is now well-settled that this requires federal courts to give the same preclusive effect to state court judgments "that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); *see also Haring v. Prosise*, 462 U.S. at 313, 103 S.Ct. at 2373.

In the absence of federal law modifying the operation of § 1738, the preclusive effect of a prior state court judgment is therefore determined in the first instance by state law. The Supreme Court has repeatedly held that § 1983 does not operate to modify the application of § 1738 as to either claim or issue preclusion. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (claim preclusion); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (issue preclusion); *see also University of Tennessee v. Elliot*, —— U.S.

---

**4.** "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Man-

ner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S.Const., Art. IV, § 1.

——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (although § 1738 not applicable, federal common law operates to require federal courts to give agency's fact-finding preclusive effect in § 1983 action when agency acting in judicial capacity).

An analysis of res judicata or collateral estoppel by a prior state court proceeding in a federal § 1983 action must thus begin with a consideration of whether relitigation of the issue or claim would be barred under state law. Secondly, federal law then provides a check on the state process by requiring that the party against whom the earlier decision is asserted has had a "full and fair opportunity" to raise or litigate the issue decided by the prior state court litigation. *See Haring v. Prosise,* 462 U.S. at 313–14, 103 S.Ct. at 2373; *Allen v. McCurry,* 449 U.S. at 95, 101, 101 S.Ct. at 415, 418.

Applying this analysis to the facts of our case, we must first decide whether Ms. Leaman's claim against the individual defendants would be barred in a later proceeding in the Ohio courts under applicable doctrines of res judicata and collateral estoppel. The standard for determining when the doctrine of res judicata applies to Ohio litigants is as follows: "A *final judgment* rendered by a court of *competent jurisdiction* on the merits is conclusive as to the *rights of the parties* and, *as to them,* constitutes an absolute bar to a subsequent action involving the same cause of action." *State ex rel. Cartmell v. Dorrian,* 11 Ohio St.3d 177, 178, 464 N.E.2d 556, 558–59 (1984) (emphasis added). In the context of this case, the Court of Claims did not have jurisdiction to render judgment against the individual defendants.[5] *See* Ohio Rev.Code Ann. § 2743.02(E) (Baldwin 1986); *McIntosh v. University of Cincinnati,* 24 Ohio App.3d 116, 117 n. 4, 493 N.E.2d 321, 322 n. 4 (1985). Accordingly, Ms. Leaman's § 1983 claims against the individual defendants are not barred by res judicata.

Collateral estoppel, on the other hand, applies to preclude the redetermination of issues which have been decided by an earlier tribunal after giving the parties a full and fair opportunity to litigate their claims. A fair reading of the Court of Claims decision makes it clear that it did not decide Ms. Leaman's federal claims at all. The Court of Claims expressly stated that "[t]he issues of the rights of a '1983' action apparently are being determined in a federal court." *Leaman v. Ohio Dept. of Mental Retardation and Developmental Disabilities,* No. 84–09161, slip op. at 9 (Ohio Ct.Cl. May 8, 1985) (Joint Appendix at 61; 74 Civ.Actions J. 144). From this statement, it is obvious that Ms. Leaman was given no opportunity whatever—much less a "full and fair opportunity"—to litigate her federal claim against the individual defendants. Principles of collateral estoppel, therefore, do not bar litigation of her § 1983 claims in a federal forum.

Under our view of the Supremacy Clause and basic principles of federal jurisdiction, the only doctrine which may validly bar Ms. Leaman from litigating her § 1983 claims in a federal court are those of res judicata and collateral estoppel. Since neither of these doctrines apply in this case, Ms. Leaman should be permitted to proceed with her § 1983 action against the individual defendants in federal forum.

## IV.

Although I have addressed the merits of this case, there is a valid question as to whether the merits should have been reheard en banc in light of the recusal problem. The vote for en banc review of the panel decision was 8 to 7 in favor of review. After the en banc vote was taken, a judge who had voted in favor of reconsideration then recused himself from the case. As the Republican whip in the Ohio legislature, he drafted and co-sponsored the act in question.

---

5. The Courts of Claims statute does provide a method by which the state could implead individual officers as third-party defendants. Ohio Rev.Code Ann. § 2743.02(E) (Baldwin 1986). However, since the state did not do so in this case, the individuals were not properly before the court. Accordingly, the Court of Claims did not have jurisdiction to render judgment against the individuals.

The issue presented is whether the recused judge's vote that caused the rehearing en banc should be counted. At a conference on January 28, 1987, the Court voted to continue the en banc proceeding unabated without allowing the parties the opportunity to brief and argue the effect of this recusal. I disagree with the Court on this procedure. If the recusal issue had been properly addressed, the Court would have to conclude that there were not enough votes for en banc review and the panel decision would stand.[6]

Under the rules of our circuit, a majority vote of all active judges of the court to rehear a case en banc automatically vacates the panel decision of the court. If the recused judge disqualified himself when the petition for rehearing en banc was first circulated, the rehearing would not have been granted and the panel decision would have remained in effect. This is because only seven judges would have favored rehearing, and seven of fifteen obviously does not constitute a majority of the court.[7]

A judge's duty to recuse himself is governed by federal statute. The federal recusal statute provides in pertinent part:

Any justice, judge, or magistrate of the United States *shall* disqualify himself in *any proceeding* in which his impartiality might *reasonably be questioned.*

28 U.S.C. § 455(a) (1982) (emphasis added). The term "proceeding" is defined in the statute to include the various stages of litigation including appellate review. 28 U.S.C. § 455(d)(1) (1982). The term "proceeding" within the meaning of § 455(a) should be interpreted to encompass a judicial proceeding in which judges vote on whether to vacate a panel decision by granting en banc review. Since a judge's vote on a petition to rehear may be outcome-determinative, as amply demonstrated in this case, it is inconceivable that official action on the motion would not be covered by the statute. As the Fourth Circuit has stated on this same question, "patently a judge who is disqualified from acting must not be able to affect the determination of any cause from which he is barred." *Arnold v. Eastern Air Lines,* 712 F.2d 899, 904 (4th Cir.1983) (en banc), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984). Accordingly, the judge's vote in this case falls within the ambit of the statute.

The test for whether recusal is required by the federal statute is what a "reasonable person knowing all the relevant facts would think about the impartiality of the judge." *Roberts v. Bailar,* 625 F.2d 125, 129 (6th Cir.1980); *see also United States v. Norton,* 700 F.2d 1072, 1076 (6th Cir.), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983); *Hall v. Small Business Admin.,* 695 F.2d 175, 179 (5th Cir. 1983) ("reasonable person, knowing all the circumstances, would harbor doubts about his impartiality"). The *Roberts* case holds further that "[e]ven where the question is close, the judge whose impartiality might reasonably be questioned *must* recuse himself from the trial." 625 F.2d at 129 (emphasis added).

---

**6.** The Court purports to cure its defect in procedure through a process of "ratification." The Court states at page 948 of its opinion that at an administrative meeting the full court "ratified" the decision to grant rehearing en banc. However, the record of the administrative meeting indicates that what was "ratified" was a motion to sustain the ruling of the Chief Judge that the recusal was not retroactive and therefore the en banc vote should not be disturbed. Such a motion is no substitute for a straight up-or-down vote on whether to grant en banc review. If there were to be a new vote on the question of en banc review, then the vote should be taken in accordance with the rules of the Court and not confused with another matter. *See* Court Policies Section 11.6.

**7.** In *Clark v. American Broadcasting Companies,* 684 F.2d 1208, 1226 (6th Cir.1982), this Court decided that when a judge disqualifies himself from a petition to rehear, that judge is nonetheless counted as a judge sitting in "regular active service" within the meaning of Rule 35(a) of the Federal Rules of Appellate Procedure. Applying more sound reasoning, other circuits have adopted a rule for tabulating rehearing votes which excludes the disqualified judge from the denominator of the fraction. *See, e.g., Arnold v. Eastern Air Lines,* 712 F.2d 899 (4th Cir.1983) (en banc), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984).

The legislative history of the recusal statute reinforces our view of the mandatory duty imposed on the conflicted judge. The issue is one of law which does not depend on the discretion or the conscience of the individual judge or the collegial feelings of the Court. As this Court explained in *Roberts*, "To promote public confidence in the impartiality of the federal judicial system, the Congress in 1974 shifted the focus of § 455" from a subjective to an objective standard. 625 F.2d at 129. The congressional committee report accompanying the 1974 change in the recusal statute stated that the new statute "sets up an objective standard, rather than the subjective standard set forth in the existing statute through the use of the phrase 'in his opinion.'" *Judiciary—Disqualification of Judges*, H.R.Rep. No. 1453, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6354–55. As part of its effort to promote public confidence in the judiciary, Congress enacted the current statute with the express purpose of taking the recusal question out of the individual discretion of the judge, a point the majority fails to recognize by citing with approval judicial practice prior to the recusal statute's amendment.

It is obvious that the recused judge's involvement as drafter and co-sponsor of the Ohio bill now under attack in this litigation *requires* his recusal from this entire proceeding, including his vote on the petition to rehear en banc. The recused judge's position here is even more conflicting than the situation faced by Judge Keady in a case arising after the 1974 amendment of the recusal statute.[8] *Limeco, Inc. v. Division of Lime*, 571 F.Supp. 710 (N.D.Miss.1983). In that case, Judge Keady voted against a bill in the state legislature forty-one years earlier which had created the defendant, a state-owned agency. Despite his minor involvement and the passage of four decades, Judge Keady felt compelled to recuse himself from the litigation. Even though the litigation had been proceeding for two years

before the conflict was brought to Judge Keady's attention, Judge Keady recused himself as soon as he became aware of the conflict.

In his recusal order, Judge Keady noted that his vote in the state legislature forty-one years earlier was a sufficient expression of his opinion on the case before him to call his impartiality into question. Judge Keady explained his recusal decision as follows:

> Judicial ethics "exact more than virtuous behavior; they command impeccable appearance. Purity of heart is not enough. Judges' robes must be as spotless as their actual conduct." *Hall v. Small Business Administration*, 695 F.2d 175, 176 (5th Cir.1983).

*Limeco*, 571 F.Supp. at 711.

Unlike Judge Keady in *Limeco*, the recused judge here did not merely vote on a bill—he recently drafted and cosponsored the legislation under constitutional attack in this litigation. This judge has recognized a conflict of interest that has prompted him to recuse himself. This recusal decision is correct under decisions of this Court. The only issue is whether he should have recused himself earlier—*i.e.*, before voting to rehear the case en banc. Since it is undisputed that the recused judge was aware of this conflict at the time he voted for rehearing the case en banc, he should have disqualified himself prior to that vote. Recusal is *required* as soon as a judge is aware of conflict. *See Health Services Acquisition Corp. v. Liljeberg*, 796 F.2d 796 (5th Cir.1986), *cert. granted*, —— U.S. ——, 107 S.Ct. 1368, 94 L.Ed.2d 684 (1987); *United States v. Murphy*, 768 F.2d 1518 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986). No motion is required from the parties to effect a recusal. *See Liljeberg*, 796 F.2d at 802 (provisions of § 455(a) "mandatory and self-executing" upon appearance of partiality).

---

8. It should be emphasized that this is the only decision cited in any opinion in this case with similar facts to ours decided after the 1974 amendment to the statute; yet, the Court cites *Limeco* without distinguishing it.

The Court relies on the practice of a few Supreme Court justices to argue that the current case does not present a recusal problem. In the case before us we are required to construe and apply the federal recusal statute, and I do not believe the Court's invocation of past practice constitutes legal precedent on which we can rely. The fact that Chief Justice Vinson and Justices Burton and Black did not recuse themselves in cases involving legislation passed during their tenure in Congress is irrelevant: this practice does not constitute precedent. There is no federal case authorizing a federal judge to hear the constitutionality of a statute he drafted and sponsored in the legislature. Moreover, as discussed in the legislative history to the statute, it is clear that Congress in enacting the current statute intended to impose a more stringent standard than had previously existed—a point the Court itself concedes at pages 949–950. *See supra* pages 966–967. Therefore, for these reasons, the actions of the justices named by the Court are not precedent for the action approved here. Furthermore, I find the Court's citation of state case law to be irrelevant in construing and applying the *federal* recusal statute.

My concern with recusal in the present case rests fundamentally on separation of power considerations. Indeed, such considerations can be traced to the Constitutional Convention of 1787 where there was deliberation on a proposal to form a "Council of Revision" to review and approve or disapprove acts passed by the national and state legislatures. The proposal provided for membership on the Council by "the Executive and *a convenient number of the National Judiciary.*" 1 M. Farrand, *The Records of the Federal Convention of 1787* 21 (1937 rev. ed.) (1966 ed., 2d printing 1974) (emphasis added).

Although endorsed by such delegates as James Madison of Virginia, several delegates voiced opposition to the plan to include members of the judiciary as part of the Council of Revision. Rufus King of Massachusetts proposed delay of the consideration of the Council plan, "observing that the *Judges ought to be able to ex-*

*pound the law as it should come before them, free from the bias of having participated in its formation.*" *Id.* at 98 (emphasis added). John Dickenson of Delaware also expressed concern over an "improper mixture of powers." *Id.* at 140. Elbridge Gerry of Massachusetts doubted "whether the Judiciary ought to form a part of it, as they will have a sufficient check [against] encroachments on their own department by their exposition of the laws, which involved a power of deciding on their Constitutionality." *Id.* at 97.

The same kind of concern that we have about the participation of the recused judge in the case before us—that judges should be "free from the bias of having participated in [the law's] formation"—led the Constitutional Convention to reject overwhelmingly the "improper mixture" of judges and politicians in the Council of Revision.

Accordingly, I dissent.

BOYCE F. MARTIN, Jr., Circuit Judge, dissenting.

In my view, absent another vote on whether to grant a rehearing en banc, this dispute must be resolved on the merits. I disagree with the interpretation of Rule 35(a) of the Federal Rules of Appellate Procedure found in the order issued in *Clark v. American Broadcasting Companies, Inc.*, 684 F.2d 1208, 1226 (6th Cir. 1982), however until there is a new decision by the full court, we are bound by our precedent.

I disagree with the majority on the merits. The state statute involved, Ohio Revised Code § 2743.02(A)(1), states that a civil action filed in the Court of Claims waives any other cause of action against a state officer or employee based on the same act or omission. If read literally I think the statute improperly restricts the jurisdiction of a federal court to entertain a cause of action under section 1983. Consequently, it is my opinion that the statute must be construed as waiving state created claims only, not federally created causes of action such as Leaman's. In any event,

Leaman cannot be said to have waived access to federal court unless it is clear she was aware that she had two avenues available for raising her section 1983 claim. The record before us is devoid of any information which would assist in making a valid decision on this point.

I would reverse the judgment of the district court and remand the case for further proceedings.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I concur fully in Judge Keith's dissent on the merits of this case. This court is obviously and painfully split over the integrity of section 1983 and the import of the constitutional rights that the Civil Rights Act seeks to protect. From my dissenter's perch, it is small solace that even Mr. Justice Sutherland recognized the folly of constitutional bartering:

It would be a palpable incongruity to strike down an act of state legislation which, by words of express divestment, seeks to strip the citizen of rights guaranteed by the federal Constitution, but to uphold an act by which the same result is accomplished under the guise of a surrender of a right in exchange for a valuable privilege which the state threatens otherwise to withhold. It is not necessary to challenge the proposition that, as a general rule, the state, having power to deny a privilege altogether, may grant it upon such condition as it sees fit to impose. But the power of the state in that respect is not unlimited; and one of the

limitations is that it may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence.

*Frost Trucking Co. v. Railroad Comm'n,* 271 U.S. 583, 593–94, 46 S.Ct. 605, 607, 70 L.Ed. 1101 (1926).

I would also like to explain my position on the matter of the "mid-stream" recusal and its effect on the instant en banc proceedings.[1] In my view, the issue is not so much the enforcement of 28 U.S.C. § 455(a) (1982), but the proper interpretation and application of this court's en banc rule, 6th Cir.R. 14(a).[2] Today's culmination of these en banc proceedings, in light of recent events, amounts to a tacit refusal to acknowledge the practical effect of our local en banc rule and to apply that rule in a just and evenhanded manner.

Only a few uncontested facts are material to my concerns. The first is that a panel decision of this court reversed a judgment of the district court in this case. The losing party then petitioned for en banc reconsideration under local rule 14. After a polling of active judges, a bare majority (8 of 15) voted in favor of en banc review. Pursuant to our rule, that vote had the immediate effect of vacating the panel's decision. After reargument of the case, a member of our court who cast the deciding

---

1. It is most regrettable that a fine judge of this court has become the unfortunate object of this dispute. Nonetheless, he has forthrightly admitted that his impartiality in this case might reasonably be questioned.

 The discussion in the majority opinion at footnote 1 and accompanying text essentially misses the point. It is historically interesting, but irrelevant to my concern nonetheless, that years ago under different statutory standards Supreme Court Justices did not consider recusal mandatory in similar situations. In the instant case, a judge of our court *has* recused himself after casting an outcome-determinative vote. We as a court are left to deal with—not duck—that fact.

2. I am unable to agree with the Chief Judge's analysis of the interplay of the court's en banc procedure and the recusal statute, set forth at Part I of his separate opinion. We cannot absolve ourselves of our responsibility to deal with the effect of a recusal by suggesting that this circuit's en banc procedure is "controlled" by 28 U.S.C. § 46(c) and Fed.R.App.P. 35, in addition to our local rule. The unique history of this case separates it from the material provisions of the codified standards and leaves a procedural question of first impression at our doorstep.

 I am, however, in full accord with the Chief Judge's partial dissent, set forth at Part II of his separate opinion, discussing the unconstitutionality of the waiver provision of the Ohio Court of Claims Act.

vote to rehear in polling recused himself from a vote on the merits, due to an appearance of partiality. To my knowledge, that judge's self-recusal was not motivated by any circumstances different from those existing at the time of the en banc polling.

It is absolutely crucial, as an initial matter, to understand the effect of that vote in favor of en banc reconsideration, and to distinguish it, for instance, from a vote of the United States Supreme Court on a petition for writ of certiorari to review a panel decision. The grant of a writ of certiorari is a completely neutral consent to review the most recent lower court decision. A vote to review en banc, by contrast, operates to stay the issuance of this court's mandate, vacates the panel decision, and schedules a full reconsideration of the district court judgment. In situations where the panel had voted to reverse the district court, a vote to rehear en banc effectively changes the posture of the parties to reflect the status quo ante.

But for the vote of the fifteenth judge, the panel decision would not have been vacated and today's opinions would never have been issued. Undeniably, that vote was outcome-determinative. Equally undeniable is the fact that it was cast by one who later admitted that his impartiality was subject to question. By allowing that vote to stand, we wink at the reality of the conflict. There is no basis in common sense for not giving the instant recusal retroactive effect under our en banc rule. To the extent that we as a court find ourselves in an unprecedented and embarrassing position, the only just way to extricate ourselves is to rescind the order vacating the panel decision and issue the mandate on that decision.

MILBURN, Circuit Judge, dissenting.

The primary issue confronting the court involves the interpretation of Ohio Rev. Code § 2743.02(A) with regard to whether the plaintiff-appellant under the circumstances here involved waived her federal claims against the defendant employees of the State of Ohio. In my opinion, we need not reach under the present circumstances the issue of whether the statute constitutes an impermissible limitation on federal jurisdiction. Since the majority opinion does not set out the statute in full, it is set out here:

(A)(1) The State hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, except that the determination of liability is subject to the limitations set forth in this chapter and except as provided in division (A)(2) of this section. To the extent that the state has previously consented to be sued, this chapter has no applicability.

Except in the case of a civil action filed by the state, filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any state officer or employee. The waiver shall be void if the court determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

In my view, resolution of the present dispute turns on whether the court of claims made a finding as to whether the individual defendants acted "manifestly outside the scope of ... employment" or "with malicious purpose, in bad faith, or in a wanton or reckless manner." It is true, as the majority points out, that the court of claims determined that the termination of Ms. Leaman's employment "was in accordance with the law." However, it is clear that the court of claims focused upon the fact that Ms. Leaman was a probationary employee, and thus had no property interest in her continued employment.

The court of claims went on to note that Ms. Leaman had filed a section 1983 action in federal court. It made no finding on the issue of whether the individual employees acted outside the scope of employment. The language used by the court of claims judge in dismissing Ms. Leaman's action was: "The issues of the rights of a '1983' action apparently are being determined in

federal court. This court has difficulty understanding why the case is pending in the Court of Claims involving the same issues and the same party, namely the State of Ohio."

In an analogous context, Ohio courts considering the proper course of action when simultaneous suits are filed in the court of claims and the state court of general jurisdiction, have concluded that the action against the individual employees cannot be dismissed until the court of claims makes a finding regarding the scope of employment. *See, e.g., McIntosh v. University of Cincinnati,* 24 Ohio App.3d 116, 493 N.E.2d 321 (1985); *Von Hoene v. Department of Rehabilitation and Correction,* 20 Ohio App.3d 363, 486 N.E.2d 868, 872 (1985); *Smith v. Stempel,* 65 Ohio App.2d 36, 414 N.E.2d 445, 449 (1979). Given the absence of such a finding in the present case, the action against the individual employees should be allowed to proceed.

The majority opinion effectively denies Ms. Leaman the opportunity to have her claims against the individual defendants considered in any forum. In my view, such a result is not contemplated by the statute as it has been construed by the Ohio courts and is manifestly unfair. Accordingly, I respectfully dissent.