RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0330p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHARLES PLINTON, Father and Administrator of the
Estate of Charles Theordore Plinton, Deceased,
*Plaintiff-Appellant,*

*v.*

COUNTY OF SUMMIT, et al.,
*Defendants-Appellees.*

Nos. 07-3985/4103

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 06-01872—Sara E. Lioi, District Judge.

Argued: July 31, 2008

Decided and Filed: September 2, 2008

Before: KENNEDY, GILMAN, and GIBBONS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Robert C. Meeker, Akron, Ohio, for Appellant. Orville L. Reed, III, BUCKINGHAM, DOOLITTLE & BURROUGHS, LLP, Akron, Ohio, Susan Baker Ross, SUMMIT COUNTY PROSECUTOR'S OFFICE, Akron, Ohio, for Appellees. **ON BRIEF:** Edward L. Gilbert, Michael J. Wright, EDWARD L. GILBERT CO., LPA, Akron, Ohio, for Appellant. Orville L. Reed, III, David W. Hilkert, BUCKINGHAM, DOOLITTLE & BURROUGHS, LLP, Akron, Ohio, Randall W. Knutti, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, Susan Baker Ross, SUMMIT COUNTY PROSECUTOR'S OFFICE, Akron, Ohio, for Appellees.

---

## OPINION

---

KENNEDY, Circuit Judge. Plaintiff Charles Plinton appeals the district court's grant of summary judgment to defendants the County of Summit ("County") and police officer Keith Lavery ("Lavery").[1] Plaintiff also appeals the dismissal of his claim for injunctive relief against the University of Akron ("University"), a state university. Plaintiff's son, Charles Theodore Plinton

---

[1]The district court also granted summary judgment to police officer Jeffrey Newman ("Newman"). But Plaintiff does not appeal this ruling.

("Chuck"), was arrested, tried and then acquitted of selling marijuana at the University in 2004. On the day of his arrest, the University suspended Chuck from school pending the resolution of his criminal trial and an appearance in front of the University Hearing Board ("Board"). Chuck was acquitted of the criminal charges against him on August 11, 2004. In spite of the acquittal, the Board found Chuck "responsible" for violating the University code of conduct and suspended him for an additional semester to follow the Fall 2004 semester. In December 2005, Chuck committed suicide.

On August 4, 2006, Plaintiff filed this action in federal district court based on 42 U.S.C. § 1983 against the County, Lavery, and Newman, alleging that they had violated Chuck's constitutional rights by maliciously prosecuting him for marijuana trafficking. Plaintiff also sued the University, alleging that the hearing procedures had violated Chuck's due process rights, for which Plaintiff sought an injunction to prevent the University from using those procedures in the future.[2] A day before, on August 3rd, Plaintiff sued the University and assorted University employees, among them the arresting officer Lavery, in the Ohio Court of Claims for the same conduct.[3] The County prevailed on summary judgment in district court where the court held that Lavery was a state employee whose conduct could not be ascribed to the County. In the alternative, the court held that even if Lavery were a County employee, Plaintiff lacked evidentiary support for his failure-to-train claim. Lavery won summary judgment in the district court because Plaintiff had represented in the Ohio Court of Claims that Lavery was a state employee and the nature of Lavery's employment indicated that he was a state employee. The district court granted the University judgment on the pleadings because of Plaintiff's lack of standing. Plaintiff appeals these decisions in addition to statements made in the district court's opinion couched in the language of a holding and an associated footnote regarding a wrongful death claim that Plaintiff had not brought. For the reasons that follow, we AFFIRM the judgment of the district court.

## BACKGROUND

Chuck was a graduate student pursuing a masters degree in public administration from the University beginning in the fall of 2003. On April 26, 2004, he was arrested for allegedly selling marijuana on campus. On the same day, Lavery reported the arrest to the University, and as a result, Chuck was suspended by the University pending the criminal proceedings against him and a Board hearing, pursuant to University policy. After Chuck's acquittal, the Board, following a hearing and relying in part on Lavery's testimony, decided to suspend Chuck for one additional semester to follow the Fall 2004 semester. Chuck left school and obtained employment selling insurance. He committed suicide in December 2005.

Lavery started as a police officer with the University in 1998. In 2002, Lavery, who had risen to the rank of sergeant, was assigned to the Summit County Drug Unit ("SCDU"). Established in 1991, the SCDU was a multi-jurisdictional unit designed to combat drug trafficking in Summit County, Ohio, where the University is located. Lavery worked in the SCDU full time dealing with drug cases. When Lavery began with the SCDU, he was not given written copies of the SCDU's policies, nor was he formally trained on them. He did profess to know the policies' contents and to have received on-the-job training. Lavery began to investigate drug deals on the University campus where Chuck lived in early 2004. His investigation led him to arrest Chuck in April of 2004.

---

[2]Plaintiff's § 1983 suit in federal court was not a wrongful death claim; that claim was brought only in the Ohio Court of Claims.

[3]Motion to take judicial notice of Plaintiff's proceedings in the Ohio Court of Claims has been granted.

On August 4, 2006, Plaintiff filed this § 1983 action against the University, Lavery, and the County, among others, in the Northern District of Ohio. A day earlier, Plaintiff had filed suit in the Ohio Court of Claims against the University and assorted University employees, including Lavery. The Court of Claims proceeding is ongoing with respect to Plaintiff's claims for breach of contract and intentional infliction of emotional distress. His claim for wrongful death and his request for a declaratory judgment that Lavery acted in bad faith have both failed. The district court awarded summary judgment to Lavery and the County, and judgment on the pleadings to the University. This appeal followed.

## ANALYSIS

### I.    Lavery

The district court granted summary judgment to Lavery on the ground that he was a state employee. In proceeding in the Ohio Court of Claims against the state for his son's death and suspension, Plaintiff represented that Lavery was a state employee in order to receive damages from the state for Lavery's actions. This raised a problem with his claims in federal court, then, because Ohio Revised Code ("O.R.C.") § 2743.02(A) provides that the state waives its immunity from liability in the Ohio Court of Claims in exchange for a waiver from Plaintiff from filing "any cause of action, based on the same act or omission, which the filing party has against any officer or employee . . . ." "Officer or employee" as defined by O.R.C. § 109.36 refers to state employees. To avoid O.R.C. § 2743.02(A) and have his claims heard in federal district court, Plaintiff argued there that Lavery was not a state employee. The district court granted summary judgment in favor of Lavery, calling Plaintiff's unchallenged assertions in the Court of Claims "admissions" of the fact that Lavery was a state employee.

The district court's opinion made clear that the court would "reconsider the decision" if "the Court of Claims determines that Defendants Lavery and/or Newman are/is not entitled to immunity" in accordance with O.R.C. § 2743.02(A)(1). In the Ohio Court of Claims, Plaintiff's claims were quickly dismissed as to all defendants except the University, under O.R.C. § 2743.02(E).[4] The Court of Claims subsequently granted partial summary judgment to the University on Plaintiff's wrongful death claim. The court held that suicide was an intervening cause of death. *Plinton v. Univ. of Akron*, No. 2006-04989 at 10 (Ohio Ct. Cl. Dec. 12, 2007) (decision granting the University partial summary judgment). The court also ruled that Lavery, among others, deserved immunity for lack of behavior "manifestly outside the scope of [his] employment or with malicious purpose, in bad faith, or in a wanton, reckless manner." *Id.* at 5 (decision of immunity for Lavery). The liability phase of the trial for the remaining claims is currently scheduled for April 2009.

Plaintiff now argues in federal court that Lavery is not a state employee and therefore he ought not receive immunity. Dismissal was proper, however, under *Leaman v. Ohio Department of Mental Retardation & Development Disabilities*, 825 F.2d 946 (6th Cir. 1987) (en banc), *cert. denied*, 108 S.Ct. 2844 (1988). In that case, as here, Plaintiff brought suit against the state in the Court of Claims and argued there that Plaintiff was a state employee. *Leaman* laid out what courts have called a *quid pro quo* approach to waiver whereby the state makes itself available as "an otherwise unavailable deep-pocket defendant" and in exchange plaintiffs "waive suit against the [state] employees in favor of suit against the employer." *Id.* at 953.

The Sixth Circuit has consistently applied *Leaman* to bar plaintiffs from bringing suit in federal court against a state employee after bringing suit against the state in the Court of Claims based on the same claim. *See Thomson v. Harmony*, 65 F.3d 1314, 1319 n.4 (6th Cir. 1995)

---

[4]O.R.C. § 2743.02(E) states that "[t]he only defendant in original actions in the court of claims is the state." Therefore, the only defendant in the Court of Claims for the purposes of Plaintiff's suit there was the University.

(commenting that plaintiff "erroneously claims *Leaman* is inapplicable because his state court suit does not have the same defendants as his federal suit," implying that *Leaman* applies especially in the case of a defendant who appears in both lawsuits); *White by Swafford v. Gerbitz*, 860 F.2d 661, 664 (6th Cir. 1988) (barring claims in federal court under a "nearly identical waiver statute" as in *Leaman* where the "plaintiff waived his federal cause of action [against state employees] when he subsequently filed a similar claim [against the state] before the Tennessee Claims Commission").

The waiver bars subsequent suit against persons in the abstract who could be categorized as state employees under the law. However, the *quid pro quo* rationale applies with even more force when the individual sued in federal court as a non-state employee is the selfsame employee who Plaintiff attempted to characterize as a state employee in his suit in the Court of Claims against the state. Indeed, Plaintiff benefitted from using Lavery's acts to underlie the causes of action against the state in the Court of Claims. When the state trades in its immunity, it gives the plaintiff one but only one bite at the apple where the plaintiff would otherwise have no ability to proceed against the state. In the absence of this *quid pro quo*, the plaintiff could proceed only against the employee. Plaintiff cannot have it both ways by using Lavery's acts to support his claim against the state in the Court of Claims and separately proceed against Lavery in federal court.

The relevant aspect of the bargain is captured by the structure of the governing statute. Under O.R.C. § 2743.02(A), waiver of any cause of action results from filing an action in the Court of Claims against any state employee unless it is void because "the [Court of Claims] determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." The statutory scheme then provides for those limited circumstances in which a plaintiff can also sue the individual whose behavior is adjudicated as against the state in the Court of Claims proceeding. The bad faith exception requires the exclusion of all other means to void or avoid the effectuated waiver for these state employees' portion of the Court of Claims action.

In the Court of Claims, Plaintiff argued that Lavery was a state employee and sought declaratory judgment that Lavery acted in bad faith to void the waiver. The Court of Claims held that Lavery did not act in bad faith. Therefore, the court closed the only avenue for Plaintiff to sue Lavery as an individual; thus the waiver stands. Plaintiff has tried and failed to void the waiver as against Lavery in the only way provided by the statutory scheme, to which Plaintiff had elected as part of the *quid pro quo*. He is now barred from suing Lavery in federal court. On this basis, we AFFIRM the district court's grant of summary judgment in favor of Lavery.

II.     County of Summit

The district court held that Lavery was not a County employee so that the County was not liable for his conduct; and even if he were, Plaintiff did not adequately support his assertion that the County failed to train Lavery, the sole basis on which Plaintiff claimed County liability. We agree with the district court that Plaintiff failed to produce any probative evidence to support his assertion that the County failed to train Lavery.

The County is liable under § 1983 for failure to train if the Plaintiff can prove three elements: (1) "that a training program is inadequate to the tasks that the officers must perform"; (2) "that the inadequacy is the result of the [County]'s deliberate indifference"; and (3) "that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

Plaintiff principally relies upon two facts to support his position: Lavery had not seen the controlled/undercover purchases written policy nor the informant written policy; and he had not

received formal orientation or training on either of these written policies. Plaintiff also points to the Memorandum of Understanding that sets out the terms of participation in the SCDU. It states that members will "abide by all of the [] policies, procedures, rules and regulations enumerated" and that "such policies will be provided to each Unit member . . . ." Finally, Plaintiff points to Edward Gilbert's report stating that training on "clearly written and comprehensive policies" is the "foundation to police performance" that the "SCDU policy makers failed to provide . . . ."

While Plaintiff may have shown a genuine issue of material fact with respect to the inadequacy-of-training prong of *City of Canton*, he failed to present probative evidence as to the question of deliberate indifference. To show deliberate indifference, Plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). In the alternative, "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997).

Plaintiff fails to allege any pattern of constitutional violations on the part of the County. Moreover, Plaintiff lacks evidence to support an "obvious potential" for constitutional violations on the part of the County. Lavery was already a trained and experienced police officer before he joined the SCDU. He had risen to the rank of Sergeant by that time. Lavery testified that he was familiar with the County's policies and could ask questions of superiors if he had any. New officers were paired up in teams for on-the-job training. Lavery attended a Drug Enforcement Administration investigators course after joining the SCDU. Indeed, as far as being put on notice as to the obvious potential for unconstitutional behavior, the results of the SCDU show just the opposite: out of 480 arrests in 2004 and 1,086 arrests since 2001, only one prosecution resulted in an acquittal. Furthermore, supervisors of the SCDU assert that they had not received any prior allegations of misconduct on the part of officers in the SCDU.

Plaintiff asserts the "obvious" need for more or different training and otherwise only relies upon the conclusory remarks of Gilbert's report to support his position. However, deliberate indifference is a "stringent standard of fault," *Brown*, 520 U.S. at 410, for which "even heightened negligence will not suffice." *Id.* Lacking a showing of the "obvious" need for more or different training than Lavery already received as an experienced police officer and as part of the SCDU, Plaintiff's arguments fail. We therefore AFFIRM the district court's grant of summary judgment in favor of the County.

III.     University of Akron

Plaintiff sought to enjoin the University from enforcing its disciplinary procedures, which, as he put it, "could be triggered against any student at any time upon the mere allegations of a corrections officer." The district court held that Plaintiff lacked standing to challenge the policy where he failed to demonstrate a credible threat of future injury.

Plaintiff, Chuck's father, is not a student nor is there any credible threat of contact–and thus possible injury to him–with the enforcement of this policy. As put by the district court, "Plaintiff has never suggested that he will have any further contact whatsoever with [the] University upon resolution of this case." Future injury is the touchstone for our inquiry because Plaintiff seeks an injunction to halt prospective enforcement of the University's policy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-10 (1983). The standing requirement ensures the litigant's personal stake in the outcome, which Plaintiff lacks without even the remotest possibility of future injury at the hands of the University's policy. *See Id.* at 101. Therefore, we AFFIRM dismissal for lack of standing without reaching the question of the policy's constitutionality.

IV.     Order Reformation

Plaintiff seeks reformation of the lower court order stating that Plaintiff was "forestalled . . . from advancing a wrongful death claim" and the judge opined on the merits of Plaintiff's non-existent wrongful death claim in a footnote.  Lavery and Newman first asked for summary judgment on the issue of wrongful death in the trial court.  Plaintiff responded that he never brought a wrongful death claim in the first instance.  The district court denied Lavery and Newman's motion, but noted that Plaintiff could not then bring a wrongful death claim, nor did the court think that Plaintiff's claim was meritorious.

The general, well-settled principle is that "a prevailing party cannot appeal an unfavorable aspect of a decision in its favor."  *ASARCO, Inc. v. Sec'y of Labor*, 206 F.3d 720, 722 (6th Cir. 2000) (citing *New York Tel. Co. v. Maltbie*, 291 U.S. 645 (1934)).  However, a "narrow exception" is available in "unusual and limited circumstances."  *Id.*  We do not find the present circumstances "unusual and limited" enough to warrant the remedy.

The district court judge's footnote commenting that "[Lavery and Newman's motion for summary judgment] would have been granted" if Plaintiff had brought a claim for wrongful death was gratuitous and not essential to the holding denying the motion, to be sure.  However, because it is dicta, it lacks preclusive effect and therefore is unlikely to injure Plaintiff.  We therefore AFFIRM denial of Lavery and Newman's motion for summary judgment.