OPINION
McKEAGUE, Circuit Judge.
In this civil rights action, presenting claims under 42 U.S.C. § 1983 and the Tennessee Governmental Tort Liability Act, defendants — Campbell County, former Campbell County Sheriff Ron McClellan, and his former Chief Deputy, Charles Scott — appeal the district court’s order denying them summary judgment. The litigation arises out of the death of Ramsey Robert Harvey, who was shot and killed by Richard Lowe, then a Campbell County Sheriffs Deputy. The action is brought by Harvey’s wife, April Ann Harvey, and his son, Ryan A. Harvey. Liability is predicated on claims of inadequate screening of Lowe prior to hiring and failure to train and supervise him in the use of deadly force. The district court granted defendants summary judgment on the screening claim but denied summary judgment on the failure-to-train claim, finding that defendants had “failed to meet their burden of establishing an absence of genuine issues of material fact.” The court also rejected the individual defendants’ request for qualified immunity on the same basis. Because we conclude that the district court’s ruling is based in part on a misapplication of the standards governing summary judgment practice, we conclude that a pure question of law is presented over which we have jurisdiction. We further conclude that this misapplication of law resulted in reversible error. For the reasons more fully explained below, we reverse the denial of summary judgment to defendants on plaintiffs § 1983 failure-to-train claim.
I. FACTUAL AND PROCEDURAL BACKGROUND[1]
Deputy Lowe began pursuing Harvey in his patrol car in the early morning hours *559 on December 23, 2005, but the record fails to show why. Lowe radioed the Sheriffs Department dispatch to report that he was in pursuit, and when Harvey stopped his car a few minutes later, Lowe called for backup. Both Lowe and Harvey apparently got out of their vehicles and, within three minutes, during the ensuing encounter, Lowe shot Harvey in the head. Harvey died two days later from the gunshot wound. In the meantime, Lowe justified the shooting in a statement to a local newspaper reporter by explaining that Harvey was armed with a knife when he got out of his car and refused to stop or put the knife down in response to Lowe’s instruction, forcing Lowe to shoot in self-defense. This statement turned out to be false, however.
As a result of the fatal shooting, the Campbell County Sheriffs Department placed Lowe on administrative leave, and the Tennessee Bureau of Investigation (TBI) was called in to investigate. Approximately one week after the incident, Lowe took and failed a polygraph test administered by the TBI. He then admitted that he had planted a knife at the scene of the shooting. The next day, Lowe was discharged from the Sheriffs Department for tampering with evidence at a crime scene. He was later indicted on three felony charges — fabricating evidence, making a false police report, and engaging in official misconduct — and pleaded guilty to all three offenses.
Plaintiffs, Harvey’s wife and son, originally filed suit in the Circuit Court for Campbell County, Tennessee, stating claims under 42 U.S.C. § 1988 and the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated §§ 29-20-101 to -408, against Lowe and defendants Campbell County, former Sheriff McClellan, and former Chief Deputy Scott. Defendants removed the action to the District Court for the Eastern District of Tennessee. The district court dismissed Lowe from the suit, without prejudice, after three attempts to serve him proved unsuccessful. The court subsequently granted summary judgment to the remaining defendants on plaintiffs’ claim that defendants inadequately screened Lowe before hiring him. However, the district court denied summary judgment on the claim that defendants failed to train Lowe adequately and on McClellan’s and Scott’s qualified immunity defense. The individual defendants now appeal, arguing that the district court erred in denying them qualified immunity. Recognizing that issues involving Campbell County are not otherwise renewable on an interlocutory basis, the County predicates pendent appellate jurisdiction on its contention that those issues are “inextricably intertwined” with the matter of qualified immunity, over which the court properly has jurisdiction.
II. JURISDICTION
We have appellate jurisdiction over final decisions of the district court under 28 U.S.C. § 1291. A denial of summary judgment is not ordinarily considered a final decision, but a denial of summary judgment to a defendant raising the defense of qualified immunity is appealable on an interlocutory basis under the collateral order doctrine “to the extent that it turns on an issue of law.” Mitchell v. Forsyth, 472 U.S. 611, 580, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). See also Chappell v. City of Cleveland, 585 F.3d 901, 905 (6th Cir.2009); Harrison v. Ash, 539 F.3d 510, 521 (6th Cir.2008); Leary v. Livingston County, 528 F.3d 438, 447 (6th Cir.2008). This exception is narrow, however. Appellate jurisdiction exists “only to the extent that *560 a summary judgment order denies qualified immunity based on a pure issue of law.” Leary, 528 F.3d at 447-48 (quoting Gregory v. City of Louisville, 444 F.3d 725, 742 (6th Cir.2006)). A defendant may not appeal the denial of qualified immunity if the district court’s order was based on a question of “evidence sufficiency” rather than “the application of ‘clearly established’ law to a given (for appellate purposes undisputed) set of facts.” Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).
Here, the district court granted summary judgment to defendants in part, but denied summary judgment on plaintiffs’ claim that defendants had failed to train and supervise Lowe in the use of deadly force. The court held that defendants had “failed to meet their burden of establishing an absence of genuine issues of material fact.” In so ruling, the court misapplied the Supreme Court’s teaching on summary judgment practice. It is not for the moving party to establish the absence of a triable fact issue, but for the nonmovant to establish the existence of one. Yes, “a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of ‘the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,’ which it believes demonstrate the absence of a genuine issue of material fact.” Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). But there is “no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent’s claim.” Id. (emphasis in original).
Contrary to the district court’s reasoning in this case, Celotex teaches that the moving party need not “show the absence of a genuine issue of material fact,” but discharges its initial burden by “ ‘showing’ — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party’s case.” Id. at 325. Once the party moving for summary judgment has satisfied its burden, the nonmoving party must “go beyond the pleadings and by her own affidavits, or by the ‘depositions, answers to interrogatories, and admissions on file,’ designate ‘specific facts showing that there is a genuine issue for trial.’ ” Celotex, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)).
Here, as more fully explained below, defendants carried them initial burden by pointing out an absence of evidence tending to satisfy any of three essential elements of plaintiffs’ claim, i.e., that Lowe’s training was inadequate, that any inadequacy resulted from defendants’ deliberate indifference, and that the inadequacy was closely related to plaintiffs’ injury. Plaintiffs, in responding, did not present any evidence of specific facts tending to establish any off these three elements. Instead, they argued simply that the defendants’ showing of the adequacy of Lowe’s training is inconclusive and therefore insufficient to demonstrate the absence of a genuine issue of material fact. Though this is precisely the argument rejected in Celotex, the district court accepted it as persuasive.
We acknowledge that the denial of summary judgment appears to be based on factual issues, not a pure question of law. “Yet, the district court’s characterization of the basis for its ruling does not necessarily dictate the availability of appellate review.” Chappell, 585 F.3d at 906; see also Livermore ex rel. Rohm v. Lubelan, 476 F.3d 397, 402-03 (6th Cir.2007); Estate of Carter v. City of Detroit, 408 F.3d 305, 309 (6th Cir.2005). “If, apart from impermissible arguments regarding dis *561 putes of fact, defendants raise purely legal issues bearing on their entitlement to qualified immunity, then there are issues properly subject to appellate review.” Chappell, 585 F.3d at 906. “Hence, the district court’s determination that there is a factual dispute does not necessarily preclude appellate review where the ruling also hinges on legal errors as to whether the factual disputes (a) are genuine and (b) concern material facts.” Id.
The district court here committed legal error not unlike the error committed by the Eleventh Circuit in Scott v. Harris, 550 U.S. 372, 378-80, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), where the Court reversed denial of qualified immunity because the lower court had erred in finding a genuine issue of material fact. As we explained in Chappell'.
In Scott, the Eleventh Circuit was held to have erred by accepting the plaintiffs version of the facts as true even though that version was so conclusively contradicted by the record that no reasonable jury could believe it.... In other words, the court is not obliged to, and indeed should not, rely on the nonmovanf s version where it is “so utterly discredited by the record” as to be rendered a “visible fiction.” ... The court’s duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence.... This is so because the non-movant, in response to a properly made and supported motion for summary judgment, cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial.
Chappell, 585 F.3d at 906.
The district court here, too, erred as a matter of law in determining that plaintiffs’ claim could withstand a properly supported motion for summary judgment through reliance on the allegations of their complaint alone without any supporting factual evidence. Defendants’ appeal from this ruling therefore implicates a question of law. Defendants are not “merely quibbling with the district court’s reading of the factual record,” but have identified a legal issue that is subject to interlocutory appellate review. Id. (quoting Leary, 528 F.3d at 441). It follows that, to this extent, we have jurisdiction to review the district court’s denial of summary judgment. Further, insofar as Campbell County’s liability is dependent on the same showing that defendants McClellan and Scott were deliberately indifferent to Lowe’s need for additional training, we conclude that we have pendent appellate jurisdiction over its appeal, too, as the issues are inextricably intertwined. See Bates v. Dura Automotive Systems, Inc., 625 F.3d 283, 286-87 (6th Cir.2010).
III. ANALYSIS
A. Governing Legal Standards
Where a motion for summary judgment is denied on the basis of a genuine issue of material fact, review is for an abuse of discretion. Hamad v. Woodcrest Condominium Ass’n, 328 F.3d 224, 235 (6th Cir.2003). Where the denial is based solely on legal grounds, review is de novo. Id. at 235-36. A motion for summary judgment permits a movant to challenge the opposing party to present its evidence on a critical issue. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989). The movant bears the initial burden of “pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.” Id. at 1479. Thereafter, the claim will only survive summary judgment if the nonmov-ant can adduce “more than a scintilla of *562 evidence” in support of the claim; it cannot rely on “the hope that the trier of fact will disbelieve the movant’s denial of a disputed fact.” Id. Further, not just any factual dispute will defeat a properly supported motion for summary judgment; the dispute must present a genuine issue of material fact. “A dispute is ‘genuine’ only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party” ... and “[a] factual dispute concerns a ‘material’ fact only if its resolution might affect the outcome of the suit under the governing substantive law.” Gallagher v. C.H. Worldwide, Inc., 567 F.3d 268, 270 (6th Cir.2009) (citations omitted).
In terms of the substantive law, a plaintiff, to prevail on a § 1988 claim, must establish a deprivation of a constitutional or other federally protected right by a person acting under color of state law. The apprehension of a suspect “by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.” Tennessee v. Garner, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). A claim that an officer used excessive force during the course of a seizure is evaluated under an “objective reasonableness” standard. Chappell, 585 F.3d at 908 (citing Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The use of deadly force is reasonable only if “the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.” Id. (quoting Garner, 471 U.S. at 11, 105 S.Ct. 1694). Accepting the incomplete but undisputed facts, we presume that Lowe acted under color of state law and unreasonably used deadly force to restrain the apparently unarmed Harvey.
Yet, neither the County nor Lowe’s superiors, defendants McClellan and Scott, can be held liable for Lowe’s acts on a theory of respondeat superior. Phillips v. Roane County, Tenn., 534 F.3d 531, 543 (6th Cir.2008); Miller v. Calhoun County, 408 F.3d 803, 817, n. 3 (6th Cir.2005). The County may, however, be held liable under § 1983 if it maintained a policy or custom that caused the violation of Harvey’s rights. See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir.2006). “One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision.” Id. (citing City of Canton v. Harris, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). The County may be held liable if Lowe’s actions can be attributed to its failure to adequately train Deputy Lowe and this failure amounts to “deliberate indifference” to the rights of members of the public like Harvey. See City of Canton, 489 U.S. at 388, 109 S.Ct. 1197. Specifically, as the district court observed, plaintiffs must show three elements: (1) that Lowe’s training was inadequate to prepare him for the tasks that officers in his position must perform; (2) that the inadequacy persisted due to the County’s deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiffs’ injury. Plinton v. County of Summit, 540 F.3d 459, 464 (6th Cir.2008).
In Plinton, we identified two ways of demonstrating the second element, deliberate indifference. First, plaintiffs could show deliberate indifference through evidence of prior instances of unconstitutional conduct demonstrating that the County had notice that the training was deficient and likely to cause injury but ignored it. Id. (citing Fisher v. Harden, 398 F.3d 837, 849 (6th Cir.2005)). Alternatively, plaintiffs could show deliberate indifference through evidence of a single violation of federal rights, accompanied by a showing that the County had failed to train its *563 employees to handle recurring situations presenting an obvious potential for such a violation. Id. (citing Bd. of County Comm’rs of Bryan County v. Brown, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). Here, plaintiffs rely on the second alternative.
“ ‘Deliberate indifference’ is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.” Connick v. Thompson, 563 U.S.-, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (quoting Bryan County, 520 U.S. at 410, 117 S.Ct. 1382). While it may seem contrary to common sense to conceive of the County having a “policy” of not taking reasonable steps to train its employees, if the need for more or different training is so obvious that the County policymaker, i.e., then-Sheriff McClellan or potentially former Chief Deputy Scott, is shown to have been deliberately indifferent to the need, then the County may be deemed to have had a policy of deliberate indifference. Id.; Miller, 408 F.3d at 815-16. However, mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference. Id. at 816.
Further, whereas the County’s liability may be premised on its policymaker’s deliberate indifference, neither of the individual defendants, McClellan or Scott, can be held liable in his individual capacity unless he “either encouraged the specific incident of misconduct or in some other way directly participated in it.” Phillips, 534 F.3d at 543 (quoting Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999)). To hold either individual defendant liable, plaintiffs, at a minimum, must show that McClellan or Scott “at least implicitly authorized, approved, or knowingly acquiesced” in Lowe’s shooting of Harvey. Id. Plaintiffs have neither alleged nor presented any evidence to support a finding of McClellan’s or Scott’s personal involvement in the shooting. The attempt to hold McClellan and Scott liable in their individual capacities for their alleged failure to adequately train employees in Lowe’s position “improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.” Id; see also Miller, 408 F.3d at 817 n. 3 (absent evidence of personal involvement in the underlying misconduct, failure-to-train claims against individual defendants are properly deemed brought against them in their official capacities, to be treated as claims against the county). To the extent plaintiffs have adduced evidence supporting findings that McClellan or Scott was a County policymaker on matters of training and was so deliberately indifferent to the need for more comprehensive training as to render the training deficiency a matter of de facto County policy, he would be liable, if at all, in his official capacity, i.e., rendering the County liable. See Scott v. Clay County, Tenn., 205 F.3d 867, 879 n. 21 (6th Cir.2000).
B. Qualified Immunity Framework
Qualified immunity does not protect municipalities, see id., but shields government officials performing discretionary functions from individual-capacity liability if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). “Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful.” Chappell, 585 F.3d at 907. “Qualified immunity ‘gives ample room for mistaken judgments’ by protecting ‘all but the plainly incompetent or those who knowingly violate the *564 law.’ ” Id. (quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). Qualified immunity protects officials from liability for mistakes of judgment whether the error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. Pearson, 129 S.Ct. at 815.
Plaintiffs bear the burden of showing that the individual defendants are not entitled to qualified immunity. Chappell, 585 F.3d at 907. They must show, viewing the evidence in the light most favorable to them, both that a constitutional right was violated and that the right was clearly established at the time of the violation. Id. They must show that the right allegedly violated was clearly established in a particularized sense, such that a reasonable official confronted with the same situation would have known that his or her actions would violate that right. Id.
C. Essential Elements of Deliberate Indifference Claim
The district court correctly recognized that plaintiffs’ success in holding the County liable for Lowe’s shooting of Harvey based on a failure-to-train theory is dependent on their ability to adduce evidence of deliberate indifference on the part of Sheriff McClellan or Chief Deputy Scott as policymaker for the County. As explained above, however, any such showing of deliberate indifference by McClellan or Scott will not — because of the utter absence of evidence of their personal involvement in Lowe’s shooting of Harvey— support a judgment against either of them in his individual capacity. Although plaintiffs have alleged undisputed facts tending to show that Harvey was subject to an unreasonable seizure, they have neither alleged facts nor adduced evidence that would support a finding that McClellan or Scott was personally involved in the shooting or approved of or acquiesced in the shooting. It follows that McClellan and Scott can only be held liable in their official capacities and the action against them is properly deemed to be against the County. Plaintiffs have not, therefore, carried their burden of showing that the individual defendants are not entitled to qualified immunity from liability in their individual capacities. The denial of the individuals defendants’ motion for summary judgment based on qualified immunity must be reversed. As to whether plaintiffs have adduced sufficient evidence to create a triable question on the County’s liability for McClellan’s or Scott’s deliberate indifference, three elements must be satisfied, as outlined in Plinton.
1. Adequacy of Lowe’s Training
First, plaintiffs must come forward with evidence tending to show that Lowe’s training was inadequate. Although defendants were not required to support their motion for summary judgment with evidence negating plaintiffs’ claim, both individual defendants filed affidavits attesting to the adequacy of Lowe’s training. Also attached to each affidavit is a copy of Lowe’s personnel record and a copy of the Campbell County Sheriffs Department Policies and Procedures Manual.
According to Lowe’s personnel file, he worked for the Campbell County Sheriffs Department for less than six months before he was terminated. Before he was hired in Campbell County, Lowe had been a reserve police officer with the City of LaFollette (Tennessee) Police Department for less than six months (January 2005 to June 2005); had been employed by the Union County (Tennessee) Sheriffs Department as a school security officer and patrol officer for sixteen months (August 2003 to January 2005); and prior thereto had served for approximately four years as *565 a school security officer for the Knox County (Tennessee) School Division.
The file further shows that Lowe had received police officer training in the form of a seven-week course at the Walters State Community College Law Enforcement Academy in 2002. In January 2004, Lowe earned certification as a law enforcement officer from the State of Tennessee’s Peace Officer Standards and Training Commission (“POST”). Defendants McClellan and Scott stated in their affidavits that Lowe “obtained his forty (40) hours of in-service training each and every year following his POST certification, otherwise, his POST certification would have been revoked.” The record does not detail the substance of the original POST training or post-certification training Lowe received. In regard specifically to Lowe’s training in the use of deadly force, his personnel record indicates that he received “training in the constitutional application of force by a law enforcement officer” before he was hired. Both McClellan and Scott stated in their affidavits that Lowe was “trained by the Campbell County Sheriffs Department in the use of force.” Neither affiant attested to having personally trained Lowe, but both confirmed that when he was hired, Lowe was given a copy of and had access to the Sheriffs Department Policies and Procedures Manual. The 340-page manual includes a 12-page Policy on the “Use of Force & Deadly Force.”
Plaintiffs have offered no evidence disputing these sworn statements and have not identified any particular deficiency in the training. Instead, they claim that the absence of facts in the record regarding the precise nature and contents of Deputy Lowe’s training in the constitutional use of force shows that the training was inadequate. They cite McClellan’s and Scott’s failure to describe their personal training of Lowe and their own personal unfamiliarity with Lowe’s understanding of use-of-deadly-force policies as evidence that the training was inadequate. They argue that the inadequacy of the training is further demonstrated by the fact that Lowe was acting within the scope of his employment when he shot and killed the unarmed Harvey.
Plaintiffs’ position is thus based not on evidence in the record that shows their cup is half-full, but on the failure of defendants to show conclusively that their cup is full to the brim. Plaintiffs would have us draw inferences that are not reasonably supported by the record evidence. As indicated above, our duty to view the facts in the light most favorable to plaintiffs does not require or permit us to accept as true mere allegations that are not supported by factual evidence. Leary, 528 F.3d at 443-44. Plaintiffs, in response to a properly supported motion for summary judgment, cannot rely merely on allegations and arguments, but must set out specific facts showing a genuine issue for trial. Id. at 444. Plaintiffs have not done so. They have presented no facts. In fact, it appears they have not even conducted discovery designed to uncover facts supporting their allegations. They rely instead on speculative, unsupported allegations to create metaphysical doubt, which clearly does not amount to a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
The district court overlooked these shortcomings in plaintiffs’ case, concluding that defendants had not met their burden. The court held that defendants had failed to conclusively show that Lowe’s training was so adequate to the tasks performed as to demonstrate the absence of any genuine issue of material fact. In so ruling, the *566 court did not identify a single item of evidence supporting plaintiffs’ allegation that the training was inadequate. The district court thus improperly excused plaintiffs from their burden of coming forward with specific facts demonstrating a triable fact issue.
Comparing the facts of this case with those presented in Plinton further illustrates the error in the district court’s ruling. In Plinton, the plaintiff sued the county, asserting that an officer’s training was inadequate, and that this caused the officer to improperly investigate and maliciously prosecute the plaintiffs son, causing him to commit suicide. 540 F.3d at 461. The officer had not received his department’s written policies, though he professed to know them and to have received on-the-job training. Id. He had been with the department for two years and had been a police officer for six. Id. The plaintiff argued that the department’s failure to provide the written policies and formal orientation or training in those policies constituted inadequate training, and presented a report conclusorily stating that training on written policies is the “foundation to police performance” that county officials failed to provide. Id. at 464. The court held that although the plaintiff “may” have shown a genuine issue of material fact on the inadequacy prong, he had failed to show any evidence of deliberate indifference because the officer in question was already a trained and experienced officer, had testified that he knew the policies and could ask questions of supervisors if he had any, and the department had not encountered any bad outcomes in the past six years which would have put them on notice of the potential for unconstitutional behavior. Id. at 464-65. The plaintiffs assertions of the “obvious” need for more training and the “conelusory remarks” of the report on police training were held not to satisfy the “stringent” deliberate indifference standard, which requires more than “even heightened negligence.” Id. at 465. The court thus affirmed the award of summary judgment to the defendant county-
Plaintiffs in this case have presented even less evidence than the plaintiff in Plinton. Unlike the officer in Plinton, Lowe had actually received the Campbell County Sheriffs Department Policies and Procedures, including the Policy on the Use of Deadly Force. While Lowe had not been on the job as long as the officer in Plinton, he still had significant experience as a police officer, having served with three different police departments and two school systems. Further, the record shows that Lowe had completed police academy training and POST training before he was hired by the Campbell County Sheriffs Department. Here, plaintiffs have not produced any affirmative evidence refuting, impugning or challenging this showing. Hence, whereas the Plinton plaintiffs claim “may” have survived summary judgment on the issue of inadequacy of training — before losing for lack of evidence of deliberate indifference — the Harvey plaintiffs’ claim falls short in both respects. Deputy Lowe received arguably more training than the officer in Plinton, and the plaintiffs have not produced even a scintilla of affirmative evidence tending to show this training was so inadequate as to evidence deliberate indifference.
Moreover, plaintiffs’ argument and the district court’s ruling completely ignore the fact that it was manifestly not the defendants’ duty to show that Deputy Lowe’s training was adequate; it was plaintiffs’ burden to show that such training was inadequate. Plaintiffs were obligated to come forward with affirmative evidence above and beyond the pleadings to show that the training Lowe received was not sufficient. But when defendants *567 challenged plaintiffs to present their evidence of deficient training, plaintiffs’ only-response has been to argue essentially that defendants’ affidavits are insufficient to rebut plaintiffs’ unsupported allegations. This is not enough. For lack of evidence of inadequate training alone, defendants are entitled to summary judgment. Yet, the factual support for the remaining two elements of plaintiffs’ deliberate indifference theory is just as lacking.
2. Deliberate Indifference and Causation Elements
Plaintiffs have proffered even less evidence to support the second and third prongs of the Plinton test. They have provided no evidence that any inadequacy, if one indeed existed, was the result of defendants’ deliberate indifference. Evidence that a particular officer was unsatisfactorily or even negligently trained will not suffice to attach liability to a municipality unless the failure to train is shown to have been the product of deliberate indifference. City of Canton, 489 U.S. at 388-89, 109 S.Ct. 1197. Plaintiffs have offered no evidence to refute defendants’ sworn statements that Lowe received training in the constitutional use of force through his POST certification, the provision of departmental procedures, and from the Campbell County Sheriffs Department. There is no evidence that defendants were or should have been aware that the training Deputy Lowe received was inadequate, necessitating additional instruction. There is no evidence that other police departments in Tennessee routinely provide additional training for their officers in the constitutional use of force.
Moreover, here, as in Plinton, the record is devoid of evidence of prior misuses of deadly force that could be deemed to have put McClellan and Scott on notice of any deficiency in training. Plaintiffs have not even alleged that the County ignored a history of excessive force by Lowe or other deputies. “A pattern of similar constitutional violations by untrained employees is ‘ordinarily necessary1 to demonstrate deliberate indifference for purposes of failure to train.” Connick, 131 S.Ct. at 1360 (quoting Bryan County, 520 U.S. at 409, 117 S.Ct. 1382). For liability to attach in the instance of a single violation, the record must show “a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result.” Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir.1982) (internal citations omitted).
In City of Canton, the Court hypothesized that a history or pattern of prior violations might not be necessary to show deliberate indifference if the need for more or different training were “obvious.” See Connick, 131 S.Ct. at 1360-61. However, the Court’s hypothesis was premised on the assumption that the municipality had decided not to train its officers about the constitutional limits of the use of force. Id. at 1361. Under such circumstances, the highly predictable consequence that deadly force could be misused in violation of citizens’ rights could be deemed so obvious as to reflect deliberate indifference. Id. Here, however, unlike the City of Canton hypothetical, it is undisputed that Lowe had received some training in the use of deadly force. Plaintiffs therefore had to show that the County, through its policymaker(s), was on notice that, absent additional training, it was so highly predictable that sheriffs deputies would misuse deadly force as to amount to conscious disregard for citizens’ rights. Plaintiffs, like Connick, see id. at 1365, failed to make this showing.
*568 Furthermore, outside plaintiffs’ bare assertions, there is not even a scintilla of evidence that defendants’ deliberate indifference created a training regimen so deficient that it was the actual cause of Lowe’s apparently unreasonable decision to fatally shoot Harvey. What specifically transpired between Lowe and Harvey immediately before the fatal shooting is unknown. The record is devoid of information explaining what motivated Lowe to use deadly force in response to the actions of the apparently unarmed Harvey. It may be that Lowe reasonably apprehended that Harvey threatened him with imminent and serious bodily harm even though he had no gun or knife. Lowe may have made some mistake of law or fact that resulted in his use of greater force than necessary. Lowe may have acted out of sheer unmitigated malice, without any justification whatsoever — an intentional crime that no amount of training would have prevented. It is simply impossible to reasonably conclude, based on the present record, that Harvey’s death can somehow be traced back to a particular inadequacy in Lowe’s training to which defendants had been deliberately indifferent.
To reiterate, it is not reasonable to draw inferences — as the district court appears to have done — of inadequate training, deliberate indifference and causal effect from the mere fact that, given the training he had, Lowe still shot and killed Harvey. Because plaintiffs have thus utterly failed to put forth any evidence to support reasonable jury findings that the training program was inadequate, that McClellan or Scott was deliberately indifferent to the deficiency, and that the deficiency was causally related to Lowe’s shooting of Harvey, we conclude that defendants are entitled to summary judgment.
D. State-Law Claim
The parties have not — either in the district court or in their appellate briefing— separately addressed the factual support for plaintiffs’ state-law claim for negligence. In their motion for summary judgment, defendants asked for summary judgment on plaintiffs’ § 1983 claim and asked the court to decline to exercise continuing supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367. The district court denied both requests. Hence, while we reverse the denial of defendants’ motion for summary judgment, no question has been presented regarding the state-law claim and we express no opinion on its merits.
IV. CONCLUSION
This action stems from a tragic loss of life, caused by a sheriffs deputy’s apparent misuse of power. Despite our sympathies for the family members of the decedent, however, we hold, for the reasons set forth above, that plaintiffs have not adduced sufficient evidence to justify further proceedings on their claim that defendants are liable under a failure-to-train theory. Accordingly, the district court’s interlocutory order denying defendants’ motion for summary judgment is REVERSED. The matter is REMANDED to the district court for entry of judgment in favor of defendants on plaintiffs’ § 1983 failure-to-train claim and for further proceedings as appropriate on plaintiffs’ state-law claim.

. This summary of the facts is based on the allegations of the complaint and the parties’ concise statements of material facts, largely undisputed, filed in the district court in conjunction with the motion for summary judgment. R. 1, Complaint; R. 22, Defendants’ Concise Statement of Material Facts; R. 28, *559 Plaintiffs’ Response to Defendants’ Statement of Material Facts.