MARTHA CRAIG DAUGHTREY, Circuit Judge,
concurring in part and dissenting in part. Quoting Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986), the majority recognizes:
A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of “the pleadings, depositions, an *569 swers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.”
Id. at 323, 106 S.Ct. 2548 (emphasis added). The movant may discharge that duty by showing “an absence of evidence to support the nonmoving party’s case.” Id. at 325, 106 S.Ct. 2548. The nonmoving party must then “go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.” Id. at 324, 106 S.Ct. 2548 (citation and internal quotation marks omitted). The defendants in this case did not meet their initial burden of showing an absence of evidence supporting the plaintiffs claims. And, in any event, the plaintiffs identified information that, when viewed in the light most favorable to the non-mov-ants, clearly highlights genuine issues of material fact for trial. Because the district court denied the defendants’ motion for summary judgment due to the existence of such factual disputes, I believe that we are without jurisdiction at this time to rule upon the plaintiffs’ failure-to-train claim. See Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). I respectfully dissent from that portion of the majority opinion that concludes to the contrary.
To buttress its decision in this matter, the majority asserts that the plaintiffs “have not identified any particular deficiency in [Lowe’s] training,” but have instead, in order to establish that such training was inadequate, relied only upon the absence of facts in the record regarding the training Lowe received. Maj. Op. at 565. To require the plaintiffs to do more in this case would, however, paint the litigants into a corner from which there is no logical escape. The plaintiffs were not involved in the “training” given to Lowe, and they thus have no first-hand knowledge of the efforts undertaken by the defendants. Instead, by necessity, they must rely upon the information provided by the individuals and entities familiar with the instruction offered. To press upon the plaintiffs the onus of establishing the deficiencies in the instruction given to Lowe when the defendants failed to divulge the content of that instruction is not only illogical but manifestly unjust.
What information then did the defendants deign to divulge during discovery? The record before us on appeal contains only the following tidbits:
• Lowe had served as a Campbell Country sheriffs deputy for only six months at the time he killed Harvey.
• Prior to his service with the Campbell County’s Sheriffs Department, Lowe was a reserve police officer in LaFol-lette, a small Tennessee community.[2]
• Before his stint with the LaFollette Police Department, Lowe served for 16 months as a school security officer and patrol officer in Union County (Tennessee) and for approximately four additional years as a school security officer in another jurisdiction.
• Lowe completed a seven-week law-enforcement course three years prior to killing Harvey.
• Lowe received 40 hours of in-service training in 2004 and, presumably, in 2005, even though no information was provided as to the content of that training.
• Lowe’s personnel record indicates only that he received “training in the eon- *570 stitutional application of force by a law enforcement officer.” Again, however, the record gives no indication about the content of that “training.”
• Defendants McClellan and Scott stated, without further elaboration, in identical affidavits — identical even in misspellings and typographical errors contained therein — that Lowe was “trained by the Campbell County Sheriffs Department in [the] use of force.” McClellan and Scott did not, however, indicate whether they had been personally involved in training Lowe.
• When hired by the sheriffs department, Lowe received a 340-page policies-and-procedures manual, a manual that discussed “deadly force” in little more than one page and that focused more on procedures than on actual training.
• No one individual actually ensured that Lowe understood the intricacies of the department’s deadly-force policies. Instead, Lowe’s personnel file merely included a form that Lowe signed indicating that he had read and understood the manual and that his supervisor had been available to answer any questions he may have had.
The defendants’ bald assertions that Lowe was certified as a law enforcement officer and that he himself had indicated that he had read and understood a manual provided to him do not, in the absence of any mention of exactly what standards were required for certification, negate any element of the plaintiffs’ case. Moreover, the information before the district court went further and actually validated the plaintiffs’ claims by showing both that the 840-page manual was actually what it purported to be — a mere explanation of departmental policies, and that no county official was able to testify to the actual “training” that Lowe received. Viewing this information in the light most favorable to the plaintiffs, I do not believe we can legitimately dispute that the plaintiffs have highlighted a genuine factual issue regarding the adequacy of the defendant county’s training program.
Unlike the majority, I also believe that the plaintiffs have satisfied their burden of proposing a nexus between the alleged lack of training and the shooting and killing of Ramsey Robert Harvey. It is true, as stated by the majority, that “[w]hat specifically transpired between Lowe and Harvey immediately before the fatal shooting is unknown.” Maj. Op. at 568. It is equally as true, however, that we, as a reviewing court, are not required to know with certitude what precipitated the senseless killing. Instead, we are asked at this stage of the litigation only whether the information contained in the record raises the possibility that Lowe, a person who has to-date successfully eluded process servers, killed an unarmed man whom he stopped during the course of his police duties, and whether that killing could be attributable to a lack of proper training — a deficiency evidenced by the fact that no individual has yet detailed the nature of any training Lowe received. In my view, the answer to those questions is an unqualified “yes.” I thus firmly believe that the plaintiffs have established genuine issues of material fact regarding the first and third elements of their cause of action as set forth in our prior decision in Plinton v. County of Summit, 540 F.3d 459, 464 (6th Cir.2008).
The remaining element of a failure-to-train claim — whether the inadequate training can be traced to the county’s deliberate indifference — also does not present an insurmountable hurdle for the plaintiffs at the summary judgment stage of these proceedings. It is indeed true that proof of “[a] pattern of similar constitutional viola *571 tions by untrained employees is ‘ordinarily necessary’ to demonstrate deliberate indifference for purposes of failure to train.” Connick v. Thompson, 568 U.S. -, 181 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citing Bd. of Cnty. Comm’rs of Bryan Cnty. v. Brown, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). However, as the Supreme Court recognized in Connick:
In Canton [v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ], the Court left open the possibility that, “in a narrow range of circumstances,” a pattern of similar violations might not be necessary to show deliberate indifference. Bryan Cty, supra, at 409, 117 S.Ct. 1382. The Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. Canton, supra, at 390, n. 10, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412. Given the known frequency with which police attempt to arrest fleeing felons and the “predictability that an officer lacking specific tools to handle that situation will violate citizens’ rights,” the Court theorized that a city’s decision not to train the officers about constitutional limits on the use of deadly force could reflect the city’s deliberate indifference to the “highly predictable consequence,” namely, violations of constitutional rights. Bryan Cty., supra, at 409, 117 S.Ct. 1382. The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be hable under § 1983 without proof of a pre-existing pattern of violations.

Id.

Although the Court in Connick distinguished the situation before it from the hypothetical situation posed in Canton, the majority opinion in Connick did speak for-ebodingly about the issue now facing us. The Court stated:
There is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force. And in the absence of training, there is no way for novice officers to obtain the legal knowledge they require. Under those circumstances there is an obvious need for some form of training.
Id (emphasis added).
The majority opinion in this case accuses the district court of misapplying the standards governing summary-judgment practice in the federal courts. See Maj. Op. at 558-59. As I read the record in this matter, however, it is actually the majority opinion that misapplies settled summary-judgment law. That opinion bases its conclusion that the plaintiffs did not establish the deliberate indifference necessary to support a failure-to-train cause of action on its understanding that the “[plaintiffs have offered no evidence to refute defendants’ sworn statements that Lowe received training in the constitutional use of force through his POST certification, the provision of departmental procedures, and from the Campbell County Sheriffs Department.” Maj. Op. at 567. Of course, the plaintiffs have no basis for disputing that Lowe received POST certification or that he was provided a departmental policies-and-procedures manual by the Campbell County Sheriffs Department. What the plaintiffs alleged in this suit, however, is that the information provided to Lowe was insufficient to apprise him of the limits of the use of deadly force in confrontations with unarmed citizens. In response to this claim, it is the defendants who have failed to offer any evidence whatsoever regard *572 ing the content of the deadly-force training that Lowe received.
At the summary judgment stage of the proceedings, it is incumbent upon the non-moving party not to establish conclusively the validity of the assertions made in its complaint but, rather, merely to raise a genuine issue of fact regarding those assertions. Once such an issue has been identified, our procedures call for resolution of factual disputes to be made by a jury empaneled for that purpose. Because the district court in this matter recognized the presence of genuine issues of material fact regarding the establishment of the elements of a failure-to-train claim, it denied the defendants’ motion for summary judgment. I am convinced the district court was correct in doing so and therefore believe that we do not have jurisdiction over this appeal at this time. I respectfully dissent from the majority’s ruling to the contrary.

. According to the most recent edition of the Tennessee Bluebook, LaFollette had a population of 7,977 in 2009. See Tennessee Blue Book (2009-2010), available at http://state.tn. us/sos/bluebook/.